**The STATE of Texas, Appellant,**

v.

**Edwin Earl STEVENSON, Appellee.**

**No. 2–89–031–CR.**

Court of Appeals of Texas,
Fort Worth.

Feb. 8, 1990.

Amy Ayers Adams, Dist. Atty., and Christopher A. Curtis, Asst. Dist. Atty., Weatherford, for appellant.

Alex Tandy, Grand Prairie, for appellee.

Before HILL, FARRIS and DAY, JJ.

## OPINION

FARRIS, Judge.

The State of Texas appeals the trial court's orders suppressing evidence. Stevenson is charged with murder. At a pretrial hearing Stevenson sought the suppression of evidence which he contended was

obtained in violation of his rights under the fourth and fifth amendments to the United States Constitution because of a warrantless search of his residence and custodial interrogation without a *Miranda* warning. The trial court sustained Stevenson's motions by excluding evidence of statements made by Stevenson to the deputy sheriffs at the scene of the offense and evidence of a pistol found inside Stevenson's residence. We affirm the orders of the trial court because we find that Stevenson's statements were made as a result of custodial interrogation and the warrantless recovery of the revolver in Stevenson's residence was not justified by an exigent circumstance, the need to protect persons at the crime scene.

The suppressed evidence was obtained at the crime scene by Parker County Sheriff's Deputies Gundlach and Edwards. Both of the deputies came in response to a radio dispatch following a telephone call by Stevenson to the Parker County Sheriff's Office. The dispatcher advised the officers that a shooting had occurred. Gundlach arrived first pulling into the driveway immediately before an ambulance also responding to Stevenson's call. Upon arriving at Stevenson's residence, Gundlach observed two bodies lying on the ground and an elderly, pajama-clad, white male, Stevenson. Gundlach observed that Stevenson was upset and excited, complaining he could not get any help and he needed an ambulance. Gundlach asked Stevenson where the gunman was but Stevenson was evasive in his reply. Only after Gundlach explained that the ambulance crew would not treat the victims until it was safe to do so did Stevenson hesitantly reply that he had done the shooting, adding he thought the victims were burglars.

After admitting his involvement, Stevenson stated he was a heart patient and asked Gundlach that he be permitted to sit down. Gundlach allowed Stevenson to sit on the front porch. According to Gundlach he did not consider Stevenson an immediate threat because it was apparent Stevenson did not have a firearm on his person. Gundlach then moved to a position where he could observe one of the two victims, then walked toward his car to get a video camera when Deputy Edwards arrived. Gundlach testified he asked Edwards to watch the man on the porch believing that he added "he's the shooter."

Deputy Edwards testified that after a brief conversation with Gundlach he joined Stevenson on the front porch standing there for a few minutes before asking any questions. At that point Edwards testified he was uncertain of Stevenson's involvement in the shooting. Edwards asked Stevenson where the gun was and Stevenson answered it was in the bedroom, pointing in that direction. Edwards inquired where in the bedroom the gun would be located, and Stevenson replied it was under the pillow. Edwards then determined which room Stevenson was indicating and using his flashlight walked into the bedroom, over to the bed, and raised a pillow where he observed a revolver.

After discovery of the revolver Edwards left it untouched and summoned Gundlach, who made an effort to photograph the pistol as it lay on the bed. The pistol remained on the bed for a couple of hours in order that it could be videotaped in the location where it was found.

■■■■ We hold Stevenson was in police custody at the time of his statements concerning the location of the gun because he was restrained in his freedom of movement to the degree associated with a formal arrest. In arriving at this determination, we have examined the factors delineated by the Court of Criminal Appeals in light of the specific facts of this case to determine whether Stevenson was in the custody of the officers, whether probable cause to arrest existed, whether Stevenson was the focus of the investigation, the subjective intent of the officers, and Stevenson's subjective belief. *See Wicker v. State,* 740 S.W.2d 779, 786 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988).

First, Gundlach, and moments later, Edwards, arrived at a scene which was chaotic and potentially life threatening to both the officers and the ambulance attendants. The focus of their initial investigation was not upon Stevenson but upon the victims

and the potential for continued violence. However, it was immediately revealed that Stevenson was the shooter, he was unarmed, and there were no other persons in the vicinity who posed a threat to the police officers or the ambulance crew. Stevenson asked for permission to sit down on his own front porch which demonstrates his subjective belief that his freedom of movement was restrained to the degree of a formal arrest. Furthermore, since there were no other persons around and Gundlach felt safe enough to leave Stevenson unguarded on the porch while he went to retrieve the video camera, it is clear he was not concerned for his own safety. Gundlach told Edwards to watch Stevenson and believes he also said "he's the shooter" which leads us to believe the focus of the investigation turned toward Stevenson with Edwards' questions concerning the gun.

It is instructive to compare the facts of this case with the facts in *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), wherein the Supreme Court held that the questioning officer was justified in failing to make available the *Miranda* safeguards because of the immediate necessity of ascertaining the whereabouts of a gun which posed more than one danger to public safety because an accomplice or third party might make use of it or later come upon it. *Id.* at 657, 104 S.Ct. at 2632.

In *Quarles*, the accused entered an A & P supermarket carrying a gun. By the time the police officer stopped and frisked him, his shoulder holster was empty. *Id.* at 652, 104 S.Ct. at 2629. After handcuffing him, the officer asked him where the gun was. Quarles nodded his head and responded "the gun is over there." Thereafter, the officer retrieved the gun and read him his *Miranda* rights. *Id.* The Supreme Court recognized that requiring law officers to recite the *Miranda* warning before asking the whereabouts of the gun might deter the accused from responding, resulting in consequences which might be something more than merely the failure to obtain incriminating evidence. However, the *Quarles* case can be distinguished.

In *Quarles*, the accused entered a *public* place carrying a gun. As stated in *Quarles*, the "concern for public safety must be paramount to adherence to the literal language of the prophylactic rules enunciated in *Miranda*." *Id.* at 653, 104 S.Ct. at 2630. Here, we have a man's private residence which is not open to the public at large. Furthermore, there were no other persons around who could have gained access to the gun and the trial court found there was an opportunity to get a search warrant. Therefore, the "public safety" exception to *Miranda* is inapplicable here.

When ruling on a motion to suppress, the trial court is the sole judge of the witnesses' credibility and is free to believe or disbelieve any or all of the testimony of the witnesses. *Hamilton v. State*, 772 S.W.2d 571, 574 (Tex.App.—Fort Worth 1989, pet. ref'd), citing *Walker v. State*, 588 S.W.2d 920, 924 (Tex.Crim.App. [Panel Op.] 1979); *Villarreal v. State*, 631 S.W.2d 205, 208 (Tex.App.—Corpus Christi 1982, no pet.). A trial court's rulings will not be set aside unless they constitute an abuse of discretion. *Sinegal v. State*, 582 S.W.2d 135, 137 (Tex.Crim.App. [Panel Op.] 1979); *Hamilton*, 772 S.W.2d at 574; *Williams v. State*, 746 S.W.2d 333, 337 (Tex.App.—Fort Worth 1988, pet. ref'd).

Because the trial court is the sole trier of fact at a hearing upon a motion to suppress, an appellate court is not at liberty to disturb a finding which is supported by the record. *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App. [Panel Op.] 1980), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981), citing *McKittrick v. State*, 541 S.W.2d 177 (Tex.Crim.App.1976). Accordingly, we hold the trial court did not abuse its discretion in granting the motion to suppress after it determined that Stevenson was in custody and the warrantless search was not justified by the public safety exception.

The order of the trial court granting the motion to suppress is affirmed.