IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00190-CR

 

Roger Guy Russell, JR.,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 361st District Court

Brazos County, Texas

Trial Court No. 03-01884-CRF-361

 



Opinion



 








A jury convicted Robert Guy Russell, Jr. of
murder under the influence of sudden passion and assessed his punishment at ten
years’ imprisonment.  Russell contends in a single issue that the trial court
erred in admitting a confession he made after stating he needed to call his
attorney.  We will reverse and remand for a new trial.

Factual Background

On the night in question, Officer Adam Henderson
with the College Station Police Department was patrolling the parking lot of a
local bar when he noticed a crowd forming.  As he drove toward the group, Henderson saw a man lying on the ground and a van speeding off.  A witness from the crowd told
 Henderson the van’s driver, Russell, had just stabbed someone.  Henderson pursued the van a short distance until Russell returned to the scene of the stabbing
and exited his vehicle.  Henderson, with his weapon drawn, ordered Russell to
the ground.  The officer then handcuffed Russell and asked a single question regarding
the whereabouts of the knife used in the stabbing.  Russell indicated the knife
was in the crowd now surrounding the victim.  Henderson then took Russell to
his patrol car and searched him.  At this time Russell said, “I need my cell
phone to call my lawyer.”  Henderson responded, “I’m not going to ask you any
questions without your lawyer.”  Russell was placed in the back of the patrol
car for about an hour during which time he was not questioned by police.  Russell
was then taken to the College Station Police Department where he was given his Miranda
rights for the first time.  He waived his rights and gave a statement regarding
the stabbing.

In a pre-trial hearing, the judge overruled Russell’s
motion to suppress his confession holding that, pursuant to the public safety
exception to Miranda, there had been no custodial interrogation at the
time Russell stated he needed to call his lawyer.  Thus, Russell had attempted
to invoke a right he did not yet have.  At trial, a recording of Russell’s
statement was played for the jury.  Russell took the stand to rebut that
confession.  The State relied heavily on this confession in its
cross-examination of Russell and used it again in closing arguments of both the
guilt-innocence and the punishment phase of trial.

Standard of Review

In reviewing a trial court’s determination in a
suppression hearing, a bifurcated standard of review is required.  See Montanez
v. State, 195 S.W.3d 101, 108 (Tex. Crim. App. 2006); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The court’s ruling is reviewed for
abuse of discretion.  Montanez, 195 S.W.3d at 108; Oles v. State,
993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  Almost total deference is owed to
the determination of historical facts.  Montanez, 195 S.W.3d at 108; Guzman,
955 S.W.2d at 89.  However, we review de novo a trial court’s ruling on
mixed questions of law and fact which do not turn on the credibility and
demeanor of witnesses.  Montanez, 195 S.W.3d at 106; Johnson v. State,
68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002).  Thus, while affording almost
total deference to the findings of fact, we review de novo the conclusions of
law to determine if the trial court abused its discretion by admitting
Russell’s confession.  See Montanez, 195 S.W.3d at 108.

The issue on appeal does not concern the
admissibility of the knife or Russell’s statement regarding its location.  This
case does not give rise to an allegation of police coercion.  The sole issue is
whether Russell’s request to call his attorney was an effective invocation of his
Fifth Amendment right to counsel after being asked a single question by police
but before being Mirandized for a formal police interrogation.[1]

Fifth Amendment Right to Counsel

The Fifth Amendment to the United States
Constitution provides that “[n]o person … shall be compelled in any criminal
case to be a witness against himself.”  For more than 100 years, this privilege
has protected defendants against the use of involuntary confessions as evidence
in a criminal trial.  Bram v. United States, 168 U.S. 532, 542, 18 S. Ct. 183, 187, 42 L. Ed. 568 (1897).  This fundamental protection was made
applicable to the states through the Due Process Clause of the Fourteenth
Amendment.  Malloy v. Hogan, 378 U.S. 1, 6, 84 S. Ct. 1489, 1492, 12 L.
Ed. 2d 653 (1964).

In Miranda v. Arizona, the Supreme Court
held that the Fifth Amendment privilege against self-incrimination “is fully
applicable during a period of custodial interrogation.”  384 U.S. 436, 460, 86 S. Ct. 1602, 1620, 16 L. Ed. 2d 694 (1966).  When seeking to introduce a
confession in its case-in-chief, the State must “[demonstrate] the use of
procedural safeguards effective to ensure the privilege against
self-incrimination.”  Id. at 444, 86 S. Ct. at 1612.  An accused must,
prior to a custodial interrogation, be warned that “he has a right to remain
silent, that any statement he does make may be used as evidence against him,
and that he has a right to the presence of an attorney, either retained or
appointed.”  Id.

Now forty years old, these Miranda
warnings are ingrained in the minds of law enforcement and the general public alike. 
Miranda, however, has not remained unchanged or unchallenged.  See
Dickerson v. United States, 530 U.S. 428, 441, 120 S. Ct. 2326, 2334-35,
147 L. Ed. 2d 405 (2000).  In response to a federal law attempting to overrule
the requirements of Miranda, the Supreme Court reaffirmed that Miranda
is constitutionally mandated.  Id. at 444, 120 S. Ct. at 2336.  While
“the Constitution does not require police to administer the particular Miranda
warnings,” the Constitution does require “a procedure that is effective in
securing Fifth Amendment rights.”  Id. at 440 n.6, 120 S. Ct. 2334 n.6.  In
the same breath in which the Court affirmed Miranda’s constitutional
roots, it also affirmed the restrictions and exceptions which had become part
of Miranda’s jurisprudence.  See id. at 441, 120 S. Ct. at 2334-35.

The public safety exception is one exception to
the prophylactic rules of Miranda.  New York v. Quarles, 467
 U.S. 649, 657, 104 S. Ct. 2626, 2632, 81 L. Ed. 2d 550 (1984).  In narrow
circumstances, the threat to the safety of the officers and the general public
outweighs the need for giving the Miranda warnings.  Id.  This
exception was created in a situation where law enforcement needed to secure a
weapon used in a crime, which weapon was feared to be exposed to the public.  See
id. (police securing a gun discarded in a grocery store).  While Miranda
warnings need not be given, the Quarles Court, in circumstances which
parallel those in Russell’s case, concluded this was undoubtedly a custodial
interrogation.  Quarles, 467 U.S. at 655, 104 S. Ct. at 2631.

The trial court in this case erroneously
concluded that the application of the public safety exception meant the
questioning by police was not a custodial interrogation.  Were such a brief,
informal questioning by police for the purpose of protecting public safety not
a custodial interrogation, then there would have been no need to find an
exception to the rules of Miranda.[2]  See
id.  The Supreme Court has never characterized its holding in Quarles
as an exception to the Fifth Amendment, but only a narrow exception to the prophylactic
rule of Miranda.  Quarles, 467 U.S. at 658, 104 S. Ct. at 2632; see also United States v. Patane, 542 U.S. 630, 639, 124 S. Ct.
2620, 2627; 159 L. Ed. 2d 667 (2004); United States v. Brathwaite, 458
F.3d 376, 382 n.8 (5th Cir. 2002); Wicker v. State, 740 S.W.2d 779, 786
(Tex. Crim. App. 1987); State v. Stephenson, 784 S.W.2d 143, 145 (Tex.
App.—Ft. Worth 1990, no pet.).  In addition, the Supreme Court noted that,
unlike the Fourth Amendment which prohibits only unreasonable searches
and seizures, the Fifth Amendment carries no similar limitation.  As such, this
exception was to the application of the “strictures” of Miranda and not to
the Fifth Amendment, itself or its application to custodial interrogations.  See
Quarles, 467 U.S. at 653 n.3, 104 S. Ct. at 2630 n.3.

From these cases, it is clear that the public
safety exception is merely an exception to the prophylactic requirements that Miranda
warnings be given but not an exception to the substantive rights found in the
Fifth Amendment.  The privilege against self-incrimination in the Fifth
Amendment and the constitutionally mandated Miranda rights are
implicated by a custodial interrogation, regardless of whether the accused has
been made aware of them.  See Miranda, 384 U.S. at 444, 86 S. Ct. at
1612; Edwards v. Arizona, 451 U.S. 477, 481-82, 101 S. Ct. 1880, 1883,
68 L. Ed. 2d 378 (1981).  Thus,
we conclude that the public safety exception simply allows police to forego the
reading of Miranda warnings, but the situation, nonetheless, is a
custodial interrogation implicating one’s constitutional rights.

Some lower courts have expanded the public
safety exception to allow police to continue questioning despite the suspect’s
invocation of his right to counsel.  United States v. DeSantis,
870 F.2d 536, 541 (9th Cir. 1989); United States v. Mobley, 40 F.3d
688, 692 (4th Cir. 1994); Trice v. United States, 662 A.2d 891, 895
(D.C. 1995); People v. Tritchler, 55 Cal. Rptr. 2d 650, 657 (Cal. Ct.
App. 1996).  Concern for public safety, argued these Courts, is still present
and continues to trump any concern regarding the suspect’s knowledge of his
rights.  DeSantis, 870 F.2d at 540-41.  However, the exception extends only
as far as the legitimate concern for safety.  Quarles, 467 U.S. at 657-59, 104 S. Ct. at 2632-34.  Where, as here, the suspect cooperates and the weapon is
found, the need for reliance on this exception has ended.  The situation is
governed by traditional Miranda rules.  See Berkemer v. McCarty,
468 U.S. 420, 429 n.10, 104 S. Ct. 3138, 3145 n.10, 82 L. Ed. 2d 317 (1984).  Under
Miranda, where an accused is subjected to a custodial interrogation, he
may properly invoke his right to have counsel present for that interrogation.  Miranda,
384 U.S. at 444, 86 S. Ct. at 1612.  A suspect’s effective invocation of
his right to counsel must be “scrupulously honored.”  See Michigan v. Mosley,
423 U.S. 96, 103, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313 (1975).  Thus, while the
police had the authority not to Mirandize Russell, his invocation of his
constitutional rights could not be ignored because the exigent circumstances had
passed.

          Having established this was a
custodial interrogation implicating the Fifth Amendment, we now turn to the
question of whether Russell’s statement, “I need my cell phone to call my
lawyer” was an effective invocation of his right to counsel.  Once a putative
defendant has properly invoked his right to have counsel present during
interrogation, questioning must cease unless initiated by the accused or unless
the questioning is conducted in the presence of counsel.  Miranda, 384 U.S. at 474, 86 S. Ct. at 1628; Edwards, 451 U.S. at 484-85, 101 S. Ct. at 1884-85.  A
subsequent valid waiver of the right to counsel can be established only upon a
showing that: 1) the accused initiated the communication with law enforcement,
and 2) the accused gave a knowing and intelligent waiver of the right he had previously
invoked.  Smith v. Illinois, 469 U.S. 91, 95, 105 S. Ct. 490, 492-93, 83
L. Ed. 2d 488 (1984); Cross v. State, 144 S.W.3d 521, 527 (Tex. Crim. App. 2004).

Triggering the “bright-line constitutional rule”
of Edwards requires a clear and unambiguous statement requesting the
assistance of counsel.  Davis v. United States, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362 (1994); Dinkins v. State, 894 S.W.2d
330, 351 (Tex. Crim. App. 1995).  Whether a statement properly invokes the
right to counsel is an objective inquiry asking if the request can reasonably
be construed as an expression of a desire of an attorney’s assistance.  Davis,
512 U.S. at 459, 114 S. Ct. at 2355; Dinkins, 894 S.W.2d at 351.  This
review of the alleged invocation of the right to counsel looks to the totality
of the circumstances.  Dinkins, 894 S.W.2d at 351.

          Russell’s statement that he needed his
cell phone to call his lawyer was a clear and unequivocal invocation of his
right to counsel.  No magic words are required to invoke that right.  Dinkins,
894 S.W.2d at 352.  Similar requests couched as questions or prefaced with
ambivalent qualifiers have been rejected as ineffective.  See Davis, 512
 U.S. at 462, 114 S. Ct. at 2357 (“Maybe I should talked to a lawyer.”); Saldana
v. State, 59 S.W.3d 703, 710-711 (Tex. App.—Austin 2001, no pet.) (“If I wanted
a lawyer, where would a lawyer come from?”); Flores v. State, 30 S.W.3d
29, 34 (Tex. App.—San Antonio 2000, pet. ref’d) (“Will you allow me to speak
with my attorney before?”).  Such ambivalence, however, was not present here.  See
Jamail v. State, 787 S.W.2d 372, 375 (Tex. Crim. App. 1990) (noting “Now
it’s time for me to call my lawyer,” was effective); In re H.V., 179
S.W.3d 746, 755-56 (Tex. App.—Ft. Worth 2005, no pet.) (“I want to call my
mother.  I want to ask her for an attorney.” effective for a minor).  This
conclusion is buttressed by Officer Henderson’s response, “I’m not going to ask
you any questions without your lawyer.”  Clearly, he understood Russell to be
asking for an attorney.  Thus, the waiver of rights obtained by police before
Russell’s statement is not knowing and intelligent because Russell had
previously invoked his right to counsel and did not initiate the subsequent
communication with the officers.  Edwards, 451 U.S. at 484-85, 101 S. Ct. at 1884-85.

          Therefore, we hold that the trial
court erred in concluding that the police question regarding the knife was not
a custodial interrogation.  Russell clearly and unequivocally invoked his right
to counsel, and in violation of the no-initiation rule of Edwards, the
police obtained a waiver of Russell’s rights.  The court abused its discretion
by overruling Russell’s motion to suppress.

Harmful Error

          We next must determine whether this
error harmed Russell.  Where, as here, the appellate record in a criminal case
reveals constitutional error, we must reverse a judgment unless we determine
beyond a reasonable doubt the error did not contribute to the conviction or
punishment.  Tex. R. App. P.
44.2(a).  We begin by reviewing the trial record to determine how the State
used this confession.

          The State offered ample evidence of
Russell’s guilt independent of his confession.  The arresting officer testified
to having seen Russell flee the scene.  The knife and Russell’s statement
regarding its location were properly admitted.  Three witnesses testified as to
Russell’s having been upset at the victim, and additional witnesses testified to
the details of the stabbing.

          Nevertheless, the State relied upon
Russell’s confession extensively, both during its case-in-chief and during
closing arguments.  Initially, the State played a recording of the confession
for the jury during its direct examination of the detective who interrogated
Russell.  Russell chose to take the stand and attempt to rebut the statements
therein.[3]  The
State then extensively cross-examined Russell with his confession, repeatedly
questioning Russell as to factually incorrect statements which he originally
gave to police.  In closing arguments at the guilt-innocence phase, portions of
Russell’s statement were again played for the jury, and the State concentrated
on discrepancies between Russell’s confession and his trial testimony.  “[A]
true word could not come out of his mouth in that statement,” stated the prosecutor. 
This characterization of Russell as an untrustworthy liar continued in the
punishment phase when the State told the jury, “[t]hat is the reason it’s not a
probation case.  Because you’ve got to take a chance on a guy who will not tell
you the truth at all.”

          The trial court instructed the jury on
the affirmative defense of self-defense and the lesser charge of manslaughter.  The
jury rejected these arguments and found Russell guilty of murder.  In the
punishment phase, the jury found this was a crime of passion, assessing
punishment at ten years’ imprisonment.  The jury rejected Russell’s request for
community supervision or a lesser term of imprisonment.

The decision on harmlessness is not determined solely
on the basis of whether there is sufficient evidence, independent of Russell’s
inadmissible statement, for a reasonable jury to reach the same conclusion.  Satterwhite
v. Texas, 486 U.S. 249, 258-59, 108 S. Ct. 1792, 1798, 100 L. Ed. 2d 284
(1988).  Instead, the question is whether the record shows, beyond a reasonable
doubt, that the error complained of did not contribute to the verdict
obtained.  Id.; McCarthy v. State, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001).  In assessing harm, we consider:

·       
the source and the nature of
the error;

 

·       
the extent to which the
State emphasized it;

 

·       
the probable collateral
implications of the error;

 

·       
the weight a juror would
probably place upon it, giving consideration to whether the record contains
“overwhelming evidence supporting the finding;” and

 

·       
whether declaring the error
harmless would encourage the State to repeat it with impunity.

 

Roberson v. State, 100 S.W.3d 36, 41 (Tex. App.—Waco 2002, pet.
denied); see also Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App.
1989).








The source of this error was the innocent
misconduct of police, and the State’s reliance on this unconstitutionally
obtained confession in trial.  During trial, this confession was repeatedly
referenced, and portions of the recorded statement were played for the jury
numerous times in questioning police and Russell.  The recording was also used in
the State’s closing arguments.  Russell’s confession to police contained
numerous fabrications, and the State used those lies to attack his character
for truthfulness and trustworthiness.  The implications of the confession were
that Russell was an untrustworthy liar who must be convicted and punished in a
severe manner.  Russell’s defense was not that he did not commit the stabbing, but
rather that the stabbing was justified as self-defense and that he lack the requisite
mens rea to be guilty of murder.  The success of these defenses turned
on the jury’s determination of Russell’s credibility, and it was his credibility
which the State used the confession to undermine.  Despite the substantial
evidence of guilt, there was little evidence of intent absent Russell’s confession. 
Though the record indicates this confession was not obtained in flagrant
violation of constitutional rights, holding its admission harmless would
encourage police and prosecutors to be less diligent in adhering to the rules
of Miranda.

          While the evidence apart from the
custodial statement is sufficient to support the verdict, we cannot find that
there is no reasonable likelihood that the State’s use of Russell’s statement
did not materially affect the jury’s deliberation.  See Wesbrook v. State,
29 S.W.3d 103, 119 (Tex. Crim. App. 2000).  As the Court of Criminal Appeals
recently stated, it is difficult to know that the thoughts of the jury
regarding a particular piece of evidence, and although suppression of this
evidence might not have altered the jury’s verdict and assessment of
punishment, we cannot say so beyond a reasonable doubt.  Renteria v. State,
No. 74-829, 2006 Tex. Crim. App. LEXIS 1919, at *16-17 (Tex. Crim. App. Oct. 4,
2006).  Therefore, we hold that the erroneous admission of Russell’s confession
cannot be found beyond a reasonable doubt to have not contributed to the jury’s
verdict of guilty of murder and its assessment of punishment.  Tex. R. App. P. 44.2(a).

“Although we are slow to overturn the verdict of
a jury, when fundamental constitutional protections are violated, however
innocently, we must uphold the integrity of that law.”  McCarthy, 65
S.W.3d at 56.  Accordingly, we reverse the judgment of the trial court and
remand this cause for a new trial consistent with this opinion.

 

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

          (Chief
Justice Gray dissenting)

Affirmed

Opinion delivered and
filed November 15, 2006

Publish

[CRPM]   









[1]
              In addition to his Fifth Amendment claim, Russell also contends
that the admission of his statement violated the Sixth Amendment, article I,
section 10 and section 19 of the Texas Constitution, and articles 1.05, 38.03,
38.22 and 38.23 of the Texas Code of Criminal Procedure.  However, because
Russell failed to present these contentions to the trial court, he did not
preserve them for appellate review.  Tex.
R. App. P. 33.1.





[2]
              The State argued in at the trial court level that because there
was a lapse of “more than a few moments” between the question regarding the
knife and Russell’s request for his attorney, the interrogation had ended, and
the request was void.  The State also placed some reliance on the fact that
there is only one question asked. The argument was not raised before this
Court, but it is nonetheless unpersuasive because these facts present a
continuous encounter with police.  Clearly, this was still a part of the
custodial interrogation when viewed from the perspective of the suspect.  United
States v. Webb, 755 F.2d  382, 388 (5th Cir. 1985); see also Bush v.
State, 697 S.W.2d 397, 403 (Tex. Crim. App. 1985) (incriminating statement
as was the result of custodial interrogation despite more than 15 minutes since
the time of the question and since the suspect’s last statement).





[3]
              By taking the stand to rebut the statement offered against him,
Russell did not waive his right to now claim harm where, in testifying, he
offered testimony to rebut the evidence admitted over his objection.  See Leday
v. State, 983 S.W.2d 713, 718-19 (Tex. Crim. App. 1998).