

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00011-CR

_____

DEON MICHAEL PRICE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1
Williamson County, Texas
Trial Court No. 17-07703-1

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

After a traffic stop in Williamson County,[1] Deon Michael Price was taken into custody and charged with driving while intoxicated (DWI). The trial court denied his pretrial motion to suppress statements made and evidence gathered during the police encounter. The jury found Price guilty as charged. According to the jury's recommendation, the trial court assessed a $2,000.00 fine against Price, but he was not assessed a period of confinement.

On appeal, Price argues that (1) the trial court erred by denying his motion to suppress because he was interrogated after invoking his right to counsel, (2) the trial court erred by denying his motion to suppress because the police violated his rights under the Fourth Amendment by detaining and arresting him without cause, (3) the evidence supporting the verdict is legally insufficient, and (4) the trial court erred by failing to give his requested jury instructions. On cross appeal, the State contends that Price's sentence is void and illegal because it falls below the statutory minimum of seventy-two hours' confinement.

Because the sentence imposed was not within the statutory punishment range, we reverse and remand the case for a new punishment hearing. We otherwise affirm the trial court's judgment on guilt/innocence because (1) Price's gun-related statements were admissible, (2) error about Price's detention and arrest was not preserved, (3) legally sufficient evidence supports the jury's

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

verdict, and (4) failure to instruct the jury as to voluntariness was harmless error and the facts did not require an instruction on exclusion of improperly obtained evidence.

## I.     Background

One night in November 2017, Price, his girlfriend (Kayla Longoria) and his friend (Skylar Hadmire) had been at Las Esquina Cantina in Round Rock, Texas, for about forty-five minutes when Price returned from the restroom and saw that Longoria was involved in a "big scuffle." Price collected Longoria and Hadmire, and the three of them left the Cantina and drove toward Price's house. During the scuffle, a Cantina employee had called 9-1-1 and reported that several patrons were trying to start a fight and that three of the people involved had just left the Cantina in a red Dodge Charger.

In response to the 9-1-1 call, Officer Rigo Valles was dispatched to the Cantina. Upon his arrival, he saw a red Dodge Charger leaving the area. Valles learned that Price, Longoria, and Hadmire were involved in an altercation with "the manager, his girlfriend and a friend of theirs or two" where a woman had been slapped and Cantina property was damaged. Neither the slapped patron nor the Cantina decided to press charges.

Officer Josh Mackey, also responding to the 9-1-1 call, saw a red or orange-looking Dodge Charger leaving the downtown area. Mackey notified Officer Christian Wilson and then decided to investigate whether the vehicle's occupants were involved in the Cantina altercation. Mackey activated his patrol car's overhead lights and followed Price's car until it pulled into the driveway of the home where Price and his father lived. Wilson's patrol car pulled in behind Mackey's car.

3

Longoria exited the car's passenger door as Wilson approached the driver-side door and spoke with Price. Wilson testified that he could smell the odor of alcohol and marihuana coming from the vehicle. Wilson also testified that Price's speech was slurred and that he was "very belligerent and agitated" and wanted to know why "the police were stopping him." Price claimed that, because he and his family had prior "bad experiences" with police officers, he was nervous, anxious, upset, and scared during the stop.[2] Even so, Wilson believed Price's argumentative demeanor was another sign of intoxication. As Wilson tried to de-escalate the situation, Price claimed that Longoria had been "jumped" at the Cantina and repeatedly told the officers to look at her eye.

As the stop unfolded, another officer on the scene thought he saw a weapon or magazine, "or something to that effect," in the car and drew his gun. In response to the officer's draw, Wilson also drew his gun. Wilson then ordered Price to "place his hands on his face" so they could determine whether there were any weapons in the car. Price "yelled out" that he had a gun with him, and Wilson asked if it was in the car or in his pants. Price conveyed that the gun was "in the car or under the seat."

The officers then told Price that they would take him out of the car, and they instructed him on how they wanted to do so. Wilson testified that Price was removed and handcuffed for safety reasons and that Price "mostly" complied with their instructions, as the officers did not have to put him forcefully on the ground. Once on the ground, Price said he wanted a lawyer, repeatedly said

---

[2]There were five or six officers present during the stop.

that his gun was in the car, and denied any wrongdoing. Those events were recorded on an officers' body camera and dash cameras, and the footage was admitted into evidence and played for the jury.[3]

Wilson decided to move Price to his patrol car for safety reasons. When Wilson placed Price in his patrol car, he smelled the scent of alcohol and marihuana on Price's person.

Hadmire was also removed from the car and placed into a different patrol car. The officers then searched the car so they could find and secure any weapons. Ultimately, the officers found a gun in the car, marihuana in the console,[4] and a pink drink in the driver's side cupholder that smelled of alcohol.

After the scene was secured, Wilson read Price his *Miranda*[5] rights, and Price told Wilson that he would talk with him. Price then told Wilson that he had gone to a few bars and had a few drinks that night and that his mind was all "jumbled up." Price also questioned Wilson about the offense with which he was being charged. Wilson responded that he was not being charged with anything yet. Even so, because of Price's belligerent behavior, his slurred speech, and the smell of alcohol, Wilson and the other officers decided to conduct field sobriety tests on Price. They determined, however, that it would be safer to perform the tests at the police station.

At the police station, an officer read Price his *Miranda* rights again, and Officer Miles Tucker then administered the field sobriety tests. Tucker testified that Price's eyes were watery,

---

[3]The body-camera footage viewed by the jury was redacted to reflect the trial court's suppression orders.

[4]Price was not charged with possession of a controlled substance because Longoria told the officers that the marihuana was her sole property.

[5]*Miranda v. Arizona*, 384 U.S. 436 (1966).

glazed, and bloodshot pink; his speech was slurred; and his eyelids drooped. While performing the field sobriety tests, Price also exhibited several positive indicators of intoxication. For those reasons, Price was arrested and charged with DWI. When Price refused to provide a blood sample, Tucker obtained a warrant for his blood. The sample showed that Price's blood alcohol concentration (BAC) was 0.142 grams per one hundred milliliters of blood, well over the state-mandated maximum-allowable BAC.

Before trial, Price moved to suppress his statements to the police and other evidence gained from the stop. Price argued that the officers lacked the requisite cause to detain and arrest him. He also argued that his confession to having had a few drinks that night and his statements about the gun were involuntary and the result of improper custodial interrogation after he had requested an attorney. The trial court held that Price's statements related to the gun were admissible but granted the motion on the remainder of Price's statements, including his confession. A jury ultimately found Price guilty of DWI, and in accordance with the jury's recommendation, the court assessed Price a $2,000.00 fine with no jail time.

## II.    The Trial Court Did Not Err by Denying Price's Motion to Suppress

In his first point of error, Price contends that the trial court should have granted his motion to suppress the statements that he made after he invoked his right to counsel.

### A.    Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor while reviewing de novo other application-of-law-to-fact issues. *See*

6

*Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). "Appellate courts . . . should afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "[A]ppellate courts may review *de novo* 'mixed questions of law and fact' not falling within this category." *Id*. We must affirm the decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

### B.     Analysis

If a suspect requests counsel at any time during a custodial interview, "he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Davis v. United States*, 512 U.S. 452, 458 (1994). "This secondary *Miranda* right to counsel is 'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights.'" *Jernigan v. State*, No. 06-10-00221-CR, 2011 WL 4954168, at *1 (Tex. App.—Texarkana Oct. 19, 2011, pet. ref'd) (mem. op., not designated for publication) (quoting *Davis*, 512 U.S. at 458). "[A] suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present." *Id*. (quoting *Davis*, 512 U.S. at 458). "However, in the context of invoking the *Miranda* right to counsel, a suspect must do so 'unambiguously.'" *Id.* (citing *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010)). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to

counsel," then an officer need not end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights. *Davis*, 512 U.S. at 459.

The United States Supreme Court has observed "that a statement either is such an assertion [of the right to counsel] or it is not." *Smith v. Illinois*, 469 U.S. 91, 97–98 (1984) (per curiam) (quoting *People v. Smith*, 466 N.E.2d 236, 241 (Ill. 1984) (Simon, J., dissenting) (alteration in original)). To unambiguously invoke his right to counsel, a suspect need not "speak with the discrimination of an Oxford don," *Davis*, 512 U.S. at 476 (Souter, J., concurring in judgment), but he "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459. If the suspect's statement fails to meet that level of clarity, the officers do not have to cease questioning the suspect. *Id.*

The trial court ruled that Price was in custody when the officers removed him from the car at gunpoint because under those circumstances, a "person would not believe they were free to leave." But the trial court refused to suppress Price's statements about the gun, finding that they were admissible under the public safety exception to *Miranda*. The public safety exception acknowledges that within narrow circumstances, the threat to the safety of officers outweighs *Miranda* protection. *New York v. Quaerles*, 467 U.S. 649, 655–57 (1984). Price argues that the trial court erred because his statements[6] were made in response to the officers' questioning after he had invoked his right to counsel.

---

[6]Price failed to identify which statements should have been suppressed.

When Price was removed from the car and handcuffed, he clearly stated that he wanted a lawyer. As a result, Price properly invoked his right to counsel. *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). Even Wilson agreed that Price's request was clear and unambiguous. That said, "[v]olunteered statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478. Before being removed from the car and requesting an attorney, Price told the officers that he had a legally registered gun and that it was in the car. Because Price made the statements before being placed in custody and invoking his right to counsel, they are not subject to the Fifth Amendment. *See id.*

Furthermore, Price's later statements about the gun were admissible under the public safety exception. *See New York v. Quarles*, 467 U.S. 649, 655–57 (1984). After Price's invocation, the officers continued to speak with Price about the gun so they could find and secure it. Price was suspected of being involved in a fight at the Cantina. After the officers started the traffic stop, Price drove about 900 feet before stopping. Once Price stopped, he was belligerent, and he told the officers that he had a gun. Additionally, because Longoria and Price's father were present outside the car and Hadmire was still in the backseat of the car, others could have potentially gained access to the gun. *See State v. Stevenson*, 784 S.W.2d 143, 145 (Tex. App.—Fort Worth 1990, no pet.) (public safety exception inapplicable when no others could gain access to gun). For those reasons, under the circumstances of this case, the officers' continued questioning of Price about the gun falls within the public safety exception. *See id.* As a result, we overrule his first point of error.

9

### III. Price Failed to Preserve Error Regarding the Propriety of His Seizure

In his second point of error, Price argues that the police violated his rights under the Fourth Amendment by detaining and arresting him without proper cause.[7] The State argues that Price failed to preserve this error for appellate review. We agree.

To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). The trial court also must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2).

During the hearing, Price argued that his statements should be suppressed because they were made in response to a custodial interrogation after he had invoked his right to counsel.[8] The trial court admitted Price's statements about the gun but suppressed his confession that he had had

---

[7]Price also contends that his rights under Article 1, Section 9, of the Texas Constitution were violated. But even so, he does not assert that his protections or remedies under Texas state law differ from those provided by federal law, and thus we will assume that the federal and state constitutions provide the same protection. *See generally Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *Reed v. State*, 308 S.W.3d 417, 419 n.3 (Tex. App.—Fort Worth 2010, no pet.); *Varnes v. State*, 63 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2001, no pet.). "When briefing constitutional questions, attorneys should carefully separate federal and state constitutional issues into separate points of error and provide substantive analysis or argument on each separate ground. If sufficient distinction is not provided, the ground may be properly disregarded." *Riordan v. State*, 905 S.W.2d 765, 772 n.6 (Tex. App.—Austin 1995, no pet.) (citations omitted).

[8]Price also raised an argument from his motion that the evidence gained from the field sobriety tests should have been suppressed under the Fifth Amendment. Even though the trial court denied that part of his motion, Price does not challenge the trial court's ruling on appeal. The Fifth Amendment applies only to incriminating evidence that is testimonial in nature. *Williams v. State*, 116 S.W.3d 788, 791 (Tex. Crim. App. 2003). "[T]o be testimonial, the communication 'must itself, explicitly or implicitly, relate a factual assertion or disclose information.'" *Id.* (quoting *Doe v. United States*, 487 U.S. 201, 210 (1988)). The Texas Court of Criminal Appeals has held that sobriety tests yield physical evidence of a suspect's mental and physical faculties, and so the results are not testimonial evidence that implicates the Fifth Amendment. *Gassaway v. State*, 957 S.W.2d 48, 51 (Tex. Crim. App. 1997) (holding that field sobriety tests do not violate the privilege against self-incrimination).

a few drinks that night. Price's motion to suppress included arguments that the officers lacked "reasonable suspicion to detain him" and lacked "probable cause for an arrest." Those issues were not preserved for our review because he did not raise those arguments during the trial court hearing, and the trial court made no express or implied ruling on those issues. *See* TEX. R. APP. P. 33.1(a)(2); *Porath v. State*, 148 S.W.3d 402, 414 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We, therefore, overrule Price's second point of error.

## IV.     Legally Sufficient Evidence Supports Price's Conviction

In his third point of error, Price argues that the evidence supporting his conviction is legally insufficient.

### A.     Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while deferring to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

**B. Analysis**

Here, the State had to prove beyond a reasonable doubt that Price was "intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (Supp.). Section 49.01(2) defines "intoxicated" as:

> (A)     not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

> (B)     having an alcohol concentration of 0.08 or more.

TEX. PENAL CODE ANN. § 49.01(2). Additionally,

> evidence that would logically raise an inference that the defendant was intoxicated at the time of driving . . . includes, [among other things] . . . erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, any admissions by the defendant concerning what, when, and how much he had been drinking.

*Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010). While the Texas Penal Code does not define "operating," the Texas Court of Criminal Appeals has held that a person "operates" a vehicle when "the totality of the circumstances demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*,

12

911 S.W.2d 388, 390 (Tex. Crim. App. 1995). The Texas Penal Code also defines a "public place" as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." TEX. PENAL CODE ANN. § 1.07(40) (Supp.).

It is uncontested that Price drove his vehicle from the Cantina to his house where he and his father lived. Wilson testified that he smelled alcohol in the car and that Price exhibited slurred speech. *See Kirsch*, 306 S.W.3d at 745 (finding that intoxication was indicated by slurred speech and odor of alcohol). Price admitted that he went to "a few bars" that night and had "three [or] four beers" before being stopped. Price also admitted that there was an open alcoholic beverage in the car's cupholder at the time of the stop, but he denied having consumed any of it. Tucker testified that, at the time of the field sobriety tests, Price exhibited watery, bloodshot eyes, slurred speech, and drooping eyelids. Moreover, Price does not contest that he exhibited several indicators of intoxication during the field sobriety tests or that his BAC exceeded 0.08 grams per one hundred milliliters of blood. *See* TEX. PENAL CODE ANN. § 49.01(2).

For these reasons, there is ample evidence from which a rational trier of fact could have found beyond a reasonable doubt that Price was guilty of operating a motor vehicle in a public place while intoxicated. As a result, we overrule his third point of error.

## V.  No Error in Refusing to Submit Price's Requested Jury Instructions

In his final point of error, Price argues that the trial court erred (1) by denying his request to instruct the jury about the voluntariness of his statements to the police under Article 38.22 and (2) by denying his request to instruct the jury that, under Article 38.23(a), evidence obtained by an

13

officer in violation of the Constitution should not be considered by the jury. *See* TEX. CODE CRIM. PROC. ANN arts. 38.22.–.23.

### A. Standard of Review

We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13. "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

### B. The Trial Court Did Not Err in Denying Instruction Under Article 38.22

Price contends that the trial court erred by denying his request to instruct the jury that they could consider his statements to Wilson and Tucker only if they found beyond a reasonable doubt that he knowingly, intelligently, and voluntarily waived his right to counsel.

14

"A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion." Tex. Code Crim. Proc. Ann. art. 38.21. That said,

> [a] defendant may claim that his statement was not freely and voluntarily made and thus may not be used as evidence against him under several different theories: (1) . . . general voluntariness [under Article 38.22, Section 6]; (2) *Miranda* . . . as expanded by Article 38.22, [Sections] 2 and 3 (the Texas confession statute); or (3) the Due Process Clause.

*Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008). If the evidence raises an issue about whether the statement was voluntary, then the defendant is entitled to an instruction on the applicable theory of involuntariness. *Id.* at 174.

Each of the three voluntariness theories listed above has its own corresponding jury instruction. The first instruction is a general voluntariness instruction under Article 38.22, Section 6, that essentially instructs the jury to consider only a defendant's incriminating statements if they believe, beyond a reasonable doubt, that they were voluntarily made. *Id.* at 173. The second type of instruction is a general warning instruction under Article 38.22, Section 7, that asks the jury to decide whether the requirements of 38.22, Sections 2 and/or 3, were met. *Id.* at 173–74. The third instruction is a specific, fact-based exclusionary-rule instruction under Article 38.23(a) on how the statement was obtained. *Id.* at 173. "Due process and *Miranda* claims may warrant both 'general' and 'specific' voluntariness instructions." *Id.* at 174.

On appeal, Price contends that he was entitled to a jury instruction under Article 38.22, Section 7,[9] the second type of theory and instruction listed above, allowing the jury to determine whether he knowingly, intelligently, and voluntarily waived his rights after having been read his *Miranda* rights. Price claims that his statements stemmed from a custodial interrogation after he had invoked his right to counsel and that the record raised a factual dispute about whether he waived his right to counsel.[10] In support, Price points to Wilson's testimony, which explained that, after Price had been read his rights, Price continued to speak, unprompted, even though Price testified that he was continually being questioned. Price also explained that, after he requested an attorney, but before he was read his *Miranda* rights, the officers "kept asking [him] questions and didn't pretty much answer [his] question." He continued, "I wanted a lawyer and that was never brought up. That was never a concern to them." Price claims that, after Wilson read Price his

---

[9]Section 7 of Article 38.22 states, "When the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 7.

[10]At trial, Price objected to the proposed jury charge and proposed the following general instruction under Article 38.22, Section 6:

> You have heard evidence that the defendant made statements to Officer Wilson and Officer Tucker. If you find the defendant did make the statement, you may consider that statement against the defendant only if you resolve a preliminary question in favor of the state.
>
> A statement of an accused may be considered against the accused only if the statement was freely and voluntarily made without compulsion or persuasion. Therefore, you may consider any statement you believe the defendant made only if you all agree the state has proved, beyond a reasonable doubt, that the defendant made the statement freely and voluntarily without compulsion or persuasion.
>
> Unless you find the state has proved, beyond a reasonable doubt, that the statements were in fact made and that it was made freely and voluntarily, you must not consider the statement for any purpose.

Yet, on appeal, Price argues he was entitled to an instruction under Article 38.22, Section 7.

*Miranda* warnings, his request for an attorney "was never brought up" and the officers "did whatever they wanted regardless." Price also said he "felt very intimidated [as though he] didn't have a choice or say-so in the matter at all."

Even assuming, without finding, that the trial court erred by failing to give Price's requested instruction to the jury, any such error was harmless. The level of harm necessary to require reversal due to jury charge error depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. Because the error was preserved at trial by objection, the record must establish only "some harm." *Almanza v. Arizona*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

Here, on direct examination, Price admitted that he had been to a few bars that night and had a few beers, despite the trial court's ruling granting his motion to suppress those statements. The trial court also admitted the results of the field sobriety tests because they were nontestimonial in nature. Price's statements about the gun were also admitted under the public safety exception. *See Gassaway*, 957 S.W.2d at 51. Yet, because Price was only charged with DWI, his statements about the gun are not inculpatory with respect to the charged offense. Thus, the record failed to show that Price was harmed as a result of the trial court's refusal to instruct the jury about the voluntariness of Price's statements while in custody.

### C. The Trial Court Did Not Err in Denying the Article 38.23(a) Instruction

Price also argues that the trial court erred by denying his request to instruct the jury that, under Article 38.23(a), evidence obtained by an officer in violation of the Constitution should not be considered by the jury. *See* TEX. CODE CRIM. PROC. ANN arts. 38.22.–.23. A trial court must

17

include an Article 38.23 instruction in the jury charge if there is a factual dispute as to how the evidence was obtained. *Balentine v. State*, 71 S.W.3d 763, 773 (Tex. Crim. App. 2002). Thus,

> [t]o be entitled to an Article 38.23(a) instruction, . . . the defendant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible.

*Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). If the underlying facts are uncontested, no fact issue exists, and the instruction need not be given. *Holmes v. State*, 962 S.W.2d 663, 673 (Tex. App.—Waco 1998, pet. ref'd, untimely filed). Nor must a trial court give the instruction if the defendant advances a legal argument, rather than a factual dispute. *See Balentine*, 71 S.W.3d at 773.

Price contends that the fact issue in dispute is whether Price committed a criminal or traffic offense "to justify a stop or police encounter." "Whether the facts known to the officers amounted to reasonable suspicion is a mixed question of law and fact." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). That said, there are no material issues of fact in dispute. Price did not dispute that a Cantina employee called 9-1-1 and reported that several patrons were trying to start a fight and that three of the people involved left the Cantina in a red Dodge Charger. In fact, Price corroborated the substance of the call, testifying that there was a "big scuffle" at the Cantina; that his girlfriend, Longoria, was "in the middle" of it; and that they left the Cantina in his car. Further, Price did not dispute that his car matched the description given by the 9-1-1 caller. Thus, the facts underlying whether the officers had sufficient cause to stop his car are undisputed. *See Madden*, 242 S.W.3d at 510. There being no issues of fact in dispute, the trial court properly

18

denied Price's requested Article 38.23 jury instruction.  *See Holmes*, 962 S.W.2d at 673.  As a result, we overrule this point of error.

## VI.     Price Received an Illegal Sentence

On cross appeal, the State contends that the case should be remanded for a new punishment hearing because Price's sentence falls below the statutory minimum sentence for the offense.  We agree.

"[T]he punishment assessed must always be within the minimum and maximum fixed by law."  *Wilson v. State*, 677 S.W.2d 518, 524 (Tex. Crim. App. 1984).  A judgment assessing less than the minimum provided by law is a nullity.  *Id.*; *State v. Cooley*, 401 S.W.3d 748, 750 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Price was charged with DWI, a Class B misdemeanor.  *See* TEX. PENAL CODE ANN. § 49.04(b) (Supp.).  Section 12.22 of the Texas Penal Code sets the general punishment ranges for Class B misdemeanors as a fine of not greater than $2,000.00 or confinement for up to 180 days. TEX. PENAL CODE ANN. § 12.22.  Yet, Section 49.04(b) is a specific statute relating to the punishment of DWI offenses like Price's, and it mandates that the minimum punishment for a Class B misdemeanor DWI is a "term of confinement of [seventy-two] hours."  TEX. PENAL CODE ANN. § 49.04(b).

Here, the State objected to the proposed punishment charge that allowed the jury to "assess [Price's] punishment at confinement in the Williamson County Jail for _____ (72 hours to 180 days), and/or . . . a fine in the amount of $_____ ($0 to $2000)."  The State argued that, under Section 49.04(b), a defendant convicted of a first DWI has "to serve at least 72 hours" but that the

19

instruction could improperly allow the jury to assess "72 hours as a minimum or forego that and just propose a fine which is statutorily incorrect." The trial court overruled the State's objections and instructed the jury in accordance with the proposed charge. Price was assessed a fine of $2,000.00, but he was not assessed a period of confinement.

Even if the provisions of Article 49.04 and Section 12.22 conflict, the DWI-specific provisions of Article 49.04 govern over the general provisions of Section 12.22. *State v. Cooley*, 401 S.W.3d 748, 751 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding that 49.04 governs over 12.22); *State v. Magee*, 29 S.W.3d 639, 640 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). "[T]he Legislature has applied specific statutory exceptions to the general misdemeanor sentencing provisions at both the Class A *and* Class B levels, mandating a jail sentence at each step notwithstanding the general provisions giving the trial court discretion to impose a fine or confinement or both." *Cooley*, 401 S.W.3d at 751 (failure to assess mandatory jail time under 49.04 resulted in remand for new punishment hearing); *see also Moffett v. State*, 230 S.W.3d 250, 251 (Tex. App.—Eastland 2007, no pet.).

Because Price's sentence of zero days' confinement fell below the minimum statutory punishment of seventy-two hours' confinement, it is illegal and a nullity. *See* TEX. PENAL CODE ANN. §§ 12.22, 49.04(b); *Cooley*, 401 S.W.3d at 751; *Mizell*, 119 S.W.3d at 806. Thus, the judgment of punishment is not valid, and we sustain this point of error.

For these reasons, we reverse the punishment assessed here and remand the case to the trial court for a new punishment hearing.

## VII. Conclusion

We reverse and remand the case for a new punishment hearing. We otherwise affirm the trial court's judgment on guilt/innocence.

Scott E. Stevens
Justice

Date Submitted:  September 10, 2019
Date Decided:  December 5, 2019

Do Not Publish