# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00195-CR

**Leonard Saldana, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. 99-5748, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

A jury found appellant Leonard Saldana guilty of capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West 1994). Pursuant to the jury's findings at the punishment phase of trial, the district court assessed punishment at life imprisonment. *See id.* § 12.31(a); Tex. Code Crim. Proc. Ann. art. 37.071, § 2 (West Supp. 2001). Appellant challenges his conviction by four points of error. We will affirm the conviction.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant and the victim, Sylvia Hernandez, lived together in Austin until January 1998. They had one daughter. On January 12 Hernandez called police after she and appellant argued. Hernandez reported to the responding officer that after she told appellant that she was ending their relationship, he pointed a gun at her at said, "This isn't over until one of us is dead." Hernandez obtained a protective order on January 14, which forbade appellant from going within two hundred yards of Hernandez or any location where appellant knew her to be. She also moved with

her daughter into her parents' home and continued living there until her death on April 4. On March 5 Austin police received a call from Hernandez complaining of a violation of the protective order. The responding officer testified that Hernandez reported to him that appellant had "pulled alongside her [car] and started yelling to her." In the early morning of March 15, Hernandez "flagged down" a police officer and reported that appellant had harassed her and tried to keep her from leaving a party. She further reported that appellant had damaged her vehicle. Later on that same evening, Hernandez reported to police that appellant had "tried to come in the back of her house from the back window." On March 28 Hernandez called the police to complain of a disturbance at her home. She reported that appellant had come to her house, banged on the front door, and broken the windows in her bedroom.

At approximately 7:30 on the morning of April 4, appellant arrived at Hernandez's home in his truck and blocked Hernandez's driveway. Hernandez was loading laundry into her car when appellant arrived. According to Bernadette Rosales, Hernandez's neighbor, appellant jumped out of his truck, screamed at Hernandez, punched her in the face, grabbed her by her hair, pulled her to his truck, and threw her inside. Although witnesses were unable to see what happened inside the truck, they testified that Hernandez screamed for help and asked appellant to let her go. Danny Rosales heard the disturbance and ran outside to help Hernandez. Rosales briefly struggled with appellant in an attempt to divert attention away from Hernandez long enough for her to escape. Bernadette Rosales testified that at one point during the struggle, appellant convinced Danny Rosales to back away by displaying his knife and telling Rosales, "I will kill you, too."

2

Appellant stabbed Hernandez several times, then told her to get out of his truck. Hernandez crawled out, and appellant drove away. Hernandez died minutes later.

## DISCUSSION

### *Sufficiency of the Evidence*

By his first and second points of error, appellant argues that the evidence is legally and factually insufficient to support his conviction for capital murder because "the State offered no, or insufficient, evidence to prove that appellant either kidnapped or attempted to kidnap Sylvia Hernandez."

In his first point of error, appellant contends that no rational trier of fact could have found that he murdered Hernandez in the course of a completed or attempted kidnapping. The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Villalon v. State,* 791 S.W.2d 130, 132 (Tex. Crim. App. 1990); *Aiken v. State*, 36 S.W.3d 131, 132 (Tex. App.—Austin 2000, no pet.). In our review of the legal sufficiency of the evidence, we must consider all the evidence that the jury was permitted, properly or improperly, to consider. *Johnson v. State,* 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). Whether the evidence meets the standard set out in *Jackson* is a question of law. *Clewis v. State*, 922 S.W.2d 126, 132 (Tex. Crim. App. 1996); *Grant v. State*, 989 S.W.2d 428, 432 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

3

*A. Capital Murder*

A person commits the offense of capital murder if he intentionally or knowingly causes an individual's death in the course of committing or attempting to commit a kidnapping. Tex. Penal Code Ann. §§ 19.02(b)(1), .03(a)(2) (West 1994). Because appellant did not contest that he intentionally killed Hernandez, the State had the burden of proving only that he caused her death during a completed or attempted kidnapping.

*B. Kidnapping*

A person commits the offense of kidnapping when he knowingly or intentionally abducts another person. *Id*. § 20.03(a). To "abduct" means to restrain a person with intent to prevent her liberation by either: (1) secreting or holding her in a place where she is not likely to be found, or (2) using or threatening to use deadly force. *Id.* § 20.01(2) (West Supp. 2001). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with her liberty, by moving her from one place to another or by confining her. *Id.* Restraint is "without consent" if it is accomplished by force, intimidation, or deception. *Id.* § 20.01(1)(A).

The statute contains two components: a required criminal act and a required culpable mental state. *King v. State*, 961 S.W.2d 691, 693-94 (Tex. App.—Austin 1998, pet. ref'd). The sole *act* involved in a kidnapping is restraint. *Mason v. State*, 905 S.W.2d 570, 575 (Tex. Crim. App. 1995). Texas courts have established that secreting and using or threatening to use deadly force are part of the *culpable mental state* that must be shown to prove kidnapping. *Brimage v. State*, 918 S.W.2d 466, 475 (Tex. Crim. App. 1996); *King*, 961 S.W.2d at 693-94. In other words, a kidnapper must intend to prevent his victim's liberation by one of such acts.

4

The State need not prove that the accused completed a kidnapping. Tex. Penal Code Ann. § 19.03(a)(2). One can be guilty of capital murder if the State can show the murder occurred during an *attempt* to kidnap the victim. *Id.* Criminal attempt requires both the commission of an act that amounts to more than mere preparation and a specific intent to commit the offense. *Id.* § 15.01 (West 1994). Thus, to establish that appellant kidnapped or attempted to kidnap Hernandez, the State had the burden of proving that (1) appellant restrained Hernandez or accomplished more than mere preparation for restraint, (2) the restraint was without Hernandez's consent, and (3) appellant acted with the specific intent to prevent Hernandez's liberation by either secreting or using or threatening to use deadly force to restrain her.

Appellant does not dispute that he restrained Hernandez without her consent. Therefore, we focus only on the State's third burden. The question before us is whether, viewing the evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant acted with the specific intent to commit kidnapping.

During a videotaped confession that was played to the jury, appellant recalled that as soon as he arrived at Hernandez's home on April 4, he and Hernandez began arguing. He stated, "I just told her, I said, 'You need to come with me. You need to come over to the house so I can calm down,' and she didn't want to come with me, so I forced her into the truck." Appellant further related his telling Hernandez, "You are coming with me right now." When Hernandez refused to voluntarily get into appellant's truck, he threw her in. Once Hernandez was inside his truck, appellant stated, "I just got caught up in the moment. The knife just happened to be there." Based on the videotaped confession, the jury could infer that appellant intended to abduct Hernandez when he

5

forced her into his truck, and it was only when she physically resisted that he decided to stab her. *See Santellan v. State*, 939 S.W.2d 155, 163-64 (Tex. Crim. App. 1997).

Appellant argues that his actions leading to the murder of Hernandez amounted to false imprisonment, not kidnapping or attempted kidnapping.[1] We disagree. "A false imprisonment becomes a kidnapping when an actor evidences a specific intent to prevent liberation by either secretion or deadly force." *Brimage*, 918 S.W.2d at 475. As previously discussed, the jury was permitted to infer that appellant acted with a specific intent to prevent Hernandez's liberation by the use of deadly force.

Appellant urges this Court to adopt Judge Miller's concurring and dissenting opinion in *Brimage*, which asserts that a finding of kidnapping or attempted kidnapping must be supported by evidence of substantial movement. *Id.* at 484-92 (Miller, J., concurring and dissenting). Under Judge Miller's theory, kidnapping requires "some intentional confinement, restraint, or movement of the victim that is . . . separate and distinguishable from the confinement, restraint, or movement attendant to another offense." *Id.* at 490. This Court has previously declined to follow such interpretation. *See, e.g., King*, 961 S.W.2d at 693-94 (holding evidence was sufficient to support conviction for kidnapping when actor physically picked up semi-conscious victim from doorway of bar and carried her to alley); *Warner v. State*, 944 S.W.2d 812, 814-15 (Tex. App.—Austin 1997) (holding evidence was sufficient to support conviction for kidnapping when actor grabbed victim, threw her into wall, twisted her arm until it broke, sat on her, then attempted to tie her with lariat),

---

[1] A person commits false imprisonment if he intentionally or knowingly restrains another person. Tex. Penal Code Ann. § 20.02 (West 1994).

*pet. dism'd, improvidently granted*, 969 S.W.2d 1 (Tex. Crim. App. 1998); *see also Price v. State*, 35 S.W.3d 136, 139-41 (Tex. App.—Waco 2000, no pet.) (holding evidence was sufficient to support conviction for kidnapping when actor shoved victim from one area of hotel room to another). The intent to prevent liberation is part of the *mens rea* of kidnapping, not the *actus reus*. *Cf. King*, 961 S.W.2d at 694 (citing *Mason*, 905 S.W.2d at 575) (holding "secretion requirement of abduction" is part of *mens rea*).

Today we again follow *Brimage*'s majority and hold that the evidence is legally sufficient to support appellant's conviction. Viewing the evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant acted with the specific intent to prevent Hernandez's liberation by the use of deadly force. We overrule appellant's first point of error.

In his second point of error, appellant contends that the "jury's failure to find appellant did not kidnap, or attempt to kidnap, Sylvia Hernandez was against the great weight and preponderance of the evidence." When conducting a factual-sufficiency review, we do not view the evidence in the light most favorable to the verdict. *Johnson v. State*, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000). Instead, we consider all evidence in a neutral light. *Id.* However, we do not substitute our judgment for that of the jury and will set aside a verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 7; *Clewis*, 922 S.W.2d at 129; *Shelton v. State*, 41 S.W.3d 208, 211 (Tex. App.—Austin 2001, pet. filed). A court of appeals should reverse on factual-insufficiency grounds only when the jury verdict is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Clewis*, 922 S.W.2d at 135.

7

Appellant argues that the evidence shows that he held the specific intent to commit murder, not kidnapping. Specifically, appellant points to the testimony of Bernadette Rosales. Rosales stated that when her husband, Danny, attempted to rescue Hernandez, appellant smiled and said, "I will kill you, too." We agree that appellant's statement shows that he held a specific intent to commit murder. However, we are unable to hold that appellant's statement precludes a finding of specific intent to kidnap. As soon as appellant arrived at Hernandez's home on the morning of April 4, he stated to her, "You need to come with me. You need to come over to the house so I can calm down." This statement alone lends adequate support to the jury's finding that appellant held the requisite intent to kidnap. We hold that, viewing all the evidence in a neutral light, the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* at 129; *Shelton*, 41 S.W.3d at 211. We overrule appellant's second point of error.

***Admissibility of the Evidence***

*A. Waiver of Miranda Rights*

In his third point of error, appellant contends that the "trial judge erred in admitting [his] written statement and the videotaped oral statement because both statements occurred after [he] refused to waive his *Miranda* rights." *See Miranda v. Arizona*, 384 U.S. 436 (1966). Appellant argues that his oral and written confessions were improperly admitted as evidence for two reasons. First, he argues that he did not voluntarily waive his right to remain silent. Second, he argues that he never possessed the requisite level of comprehension of his right to appointment of an attorney.

8

When appellant was arrested, Officer Philip Linsalata read him his *Miranda* rights from a standard blue card and asked him if he understood the rights.[2] Appellant responded affirmatively, then stated that he "[had] nothing to say." However, on the way to the police station, appellant asked about the condition of Hernandez. Linsalata responded that he did not know, then asked appellant what had happened. Appellant answered that he and Hernandez "had a domestic argument." Appellant went on to say that he had stabbed Hernandez, but he was not responsible because he was intoxicated. When Linsalata questioned him further, appellant said, "I think I should keep quiet for now." Linsalata then ceased his questioning.

Appellant was taken to the interview room of the Austin Police Department, where he was interrogated by Detective Douglas Skolaut. Skolaut read appellant his *Miranda* rights for the second time, and appellant indicated that he understood them. Later in the interview, appellant inquired as to how he could obtain a lawyer. A portion of the transcript of the interview follows:

[Saldana] A. If I wanted a lawyer, where would a lawyer come from?

[Skolaut] Q. Well, you can call one if you wanted one.

A. I ain't got no money for a damn lawyer. I mean I got a lawyer, but -- it's too expensive.

---

[2] *"Miranda* rights" derive from *Miranda v. Arizona*, 384 U.S. 436 (1966), and refer to warnings that must be read to suspects in custody. Officers must warn the accused that (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; (2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior to and during questioning; (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he has the right to terminate the interview at any time. Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West 1979).

Q. Are you asking me for a lawyer?

A. No, I'm not asking you for a lawyer. I'm just asking.

Q. Okay.

A. I mean I'm going to cooperate.

Q. I just need to be real clear that you are not asking for a lawyer. Okay. I mean it looks to me like you are trying to straighten this thing out. Let's get it straightened out and get on with it.

A. That's no problem.

Q. But I want to make sure that you are not asking me for a lawyer.

A. No, I'm not asking for a lawyer.

Q. I have to be real clear on that.

A. No, I am not asking for a lawyer.

Appellant's first argument relies on *Jacobs*, which held that in order for a defendant to waive a *Miranda* right, he must do so voluntarily, knowingly, and intelligently. *Jacobs v. State*, 787 S.W.2d 397, 401 (Tex. Crim. App. 1990). Appellant contends that the waiver of his right to remain silent was not voluntary because he had twice expressed his desire to remain silent before giving his confession. We disagree.

If a suspect is in custody, "a failure to cut off questioning after the suspect invokes his right to remain silent violates his rights and renders any subsequently obtained statements inadmissible." *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996) (citing *Michigan v. Mosley*, 423 U.S. 96 (1975)). However, we do not believe that appellant ever invoked his right to remain silent. An interrogating officer is not required to cease questioning unless the suspect

10

unambiguously invokes a right. *Id.*; *Zervos v. State*, 15 S.W.3d 146, 154 (Tex. App.—Texarkana 2000, pet. ref'd). Furthermore, police officers are not required to ask questions to clarify whether a suspect wishes to invoke his right to remain silent. *Dowthitt*, 931 S.W.2d at 257. In *Dowthitt*, the appellant argued that he had invoked his right to remain silent when he stated, "I can't say more than that. I need to rest." The court of criminal appeals disagreed, stating that "appellant's invocation of his right to remain silent was ambiguous, and [the interrogating officer] did not violate appellant's rights by continuing the interrogation." *Id.*

After he initially told Linsalata that he had nothing to say, appellant waived his right to remain silent by initiating a conversation with the officer. The only other statement from appellant that could be interpreted as an indication of his intention to invoke his right to remain silent was when he told Linsalata, "I think I should keep quiet for now." Following this statement, Linsalata asked no more questions.

Appellant never indicated to Skolaut that he wished to invoke his right to remain silent. After Skolaut read appellant his *Miranda* rights for the second time, appellant responded that he understood all of the rights. Furthermore, after he had given his videotaped confession, appellant signed a written confession that stated, "I fully understand each and all of the rights contained in the [*Miranda*] warnings. I do hereby knowingly, intentionally and voluntarily, before and during the making of this statement, waive my rights as explained above." Therefore, Skolaut was permitted to conduct the interrogation that led to appellant's videotaped and written confessions. *See id.*

Appellant's second argument focuses on his asserted misunderstanding of his right to appointment of counsel. Appellant contends that if Skolaut had made clear that he did not have to

pay for the services of an attorney, then appellant would have asked for one. Appellant maintains that his confession would not have taken place because he could not be questioned any further until an attorney was present. *See Davis v. United States*, 512 U.S. 452, 458 (1994); *Miranda*, 384 U.S. at 444. Appellant asserts that, despite the fact that he had twice stated that he understood his *Miranda* rights, Skolaut should have taken more time to ensure that he understood his right to counsel. We disagree. Where "a person's invocation of his right to counsel is not clear and unambiguous, . . . the interrogating officers are not required to automatically cease the interview, but may continue questioning as long as the questions are specifically aimed at discovering whether the accused indeed wants to consult with counsel or wishes to proceed with the interview without benefit of counsel." *Etheridge v. State*, 903 S.W.2d 1, 18 (Tex. Crim. App. 1994) (citing *Robinson v. State*, 851 S.W.2d 216, 223-24 (Tex. Crim. App. 1991)).

The waiver of a *Miranda* right must be made knowingly and intelligently. *Miranda*, 384 U.S. at 421; *Jacobs*, 787 S.W.2d at 401. A suspect cannot waive a *Miranda* right unless he holds the "requisite level of comprehension" concerning what the right includes. *Jacobs*, 787 S.W.2d at 401. Here the record reflects that appellant understood his right to counsel well enough to waive it. Skolaut fully complied with the procedures required by *Miranda*. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West 1979). Before appellant confessed to the murder of Hernandez, he stated that he understood his rights. Having expressed that he understood the warnings he had been given and the record reflecting no evidence to the contrary, appellant was bound by his statements.

We hold that appellant voluntarily, knowingly, and intelligently waived his *Miranda* rights before he confessed to the murder of Hernandez and overrule appellant's third point of error.

*B. Intoxication*

In his fourth point of error, appellant contends that his written and videotaped confessions were improperly admitted as evidence because "both of the statements were involuntary as a result of intoxication." Appellant asks this Court to hold that the district court abused his discretion by admitting appellant's oral and written confessions because, prior to giving the confessions, appellant had "ingested alcohol and controlled substances sufficient to render him intoxicated."

"At a hearing on appellant's motion to suppress evidence, the trial court is the sole judge of the weight and credibility of the evidence." *Wood v. State*, 18 S.W.3d 642, 646 (Tex. Crim. App. 2000). Our review is limited to determining whether the district court abused his discretion by admitting appellant's confessions. *See id.* Before we can determine that appellant's confessions were involuntary, we must find that, at the time the confessions were made, appellant was unable to make an independent, informed choice of free will. *See Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996); *Nichols v. State*, 754 S.W.2d 185, 190 (Tex. Crim. App. 1988). Even if we assume that appellant was intoxicated when he was arrested and interrogated, that fact alone is not sufficient to render his confession involuntary. *See Garcia v. State*, 919 S.W.2d 370, 387 (Tex. Crim. App. 1994) (op. on reh'g) (citing *Nichols*, 754 S.W.2d at 190). "The central question is the extent to which appellant was deprived of his faculties due to the intoxication." *Nichols*, 754 S.W.2d at 190.

The record reflects that, at the time appellant confessed, he had not been deprived of his faculties and was able to make an independent, informed choice of free will. *See id.* For example, before he was brought to the police station, appellant was able to comprehend that intoxication serves

13

as a defense to criminal actions in some situations. Appellant told Linsalata, "I'm not in my right mind. I take a lot of drugs and I had been drinking. Did you see beer in my truck? I am not responsible for this." He understood that it would benefit him to convince the arresting officers that he was under the influence of alcohol and drugs when he stabbed Hernandez. Additionally, while he was being questioned by Skolaut, appellant was coherent enough to make the decision that he did not want to call his own attorney because it would be too expensive.

Furthermore, neither of the police officers who tended to appellant during his arrest and interrogation testified that they believed he was intoxicated. Linsalata stated that while he was taking appellant to the police station, "[Appellant] did not appear to be intoxicated." Skolaut, the officer who administered the interrogation that led to appellant's confession, testified that he "didn't notice anything that would really indicate to [him] that [appellant] was extremely, quote, high." Skolaut stated that appellant told him he had taken forty units of cocaine prior to the murder, but a blood test revealed that appellant had ingested only .3 milligrams of cocaine. The evidence supports the district court's finding that appellant was not so intoxicated as to render his confession involuntary. *See Jones*, 944 S.W.2d at 651; *Garcia*, 919 S.W.2d at 387; *Jenkins v. State*, 912 S.W.2d 793, 807 (Tex. Crim. App. 1993); *Higgins v. State*, 924 S.W.2d 739, 743-45 (Tex. App.—Texarkana 1996, writ ref'd).

We hold that the admission of appellant's written and videotaped confessions was not a clear abuse of discretion. We overrule appellant's fourth point of error.

**CONCLUSION**

14

Having overruled appellant's four points of error, we affirm the district-court judgment.

_____

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed:   July 26, 2001

Publish