# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00654-CR

---

**Trevor Nelson Thompson, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 277TH DISTRICT COURT OF WILLIAMSON COUNTY
NO. 16-2501-K26, THE HONORABLE STACEY MATHEWS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Trevor Nelson Thompson pleaded guilty to the first-degree felony offense of aggravated assault causing serious bodily injury-family violence, involving the shooting of his father. *See* Tex. Penal Code § 22.02(b)(1). The district court convicted Thompson of that offense and, after a four-day hearing, assessed punishment at thirty-five years' imprisonment. *See id.* § 12.32. On appeal, Thompson contends that his sentence is grossly disproportionate to the crime committed, that "the evidence is legally insufficient to support the sentence," that the district court erred by denying his motion to suppress evidence of his confession, and that the district court erred by not entering a separate order containing its written findings of fact. We will affirm the district court's judgment of conviction.

## BACKGROUND

Thompson's indictment charged him with aggravated assault of a family member with a firearm. *See* Tex. Penal Code §22.02(b)(1). Thompson filed a motion to suppress his confession to the lead detective, Criminal Investigations Commander Jereme Brinkmann of the Williamson County Sheriff's Office, approximately twenty-four hours after the shooting. Thompson's motion to suppress raised the issue of his intoxication from alcohol and narcotics consumption. During a hearing on pretrial motions, the district court carried the motion to suppress to trial. At another pretrial hearing, Thompson entered an open plea of guilty to the charged offense. The district court accepted the plea, "called off the jury for [the] next week," requested preparation of a presentence investigation report, and set the case for punishment.[1]

Before the punishment phase of trial began, the district court held a hearing on Thompson's motion to suppress. Commander Brinkmann was the only witness to testify during the hearing. He testified that he had been a police officer for twenty-one years, that he was present when Thompson was arrested at an apartment at approximately 1:30 in the afternoon on the day after the shooting, and that he did not start interviewing Thompson until "several hours, like five hours had passed, maybe even longer" after his arrest at the apartment. Commander Brinkmann also testified that before he conducted the interview, he read Thompson his *Miranda* rights "off a card provided by the [district attorney]'s office," as per Commander Brinkmann's usual practice. *See Miranda v. Arizona*, 384 U.S. 436, 444, 478-79 (1966); *see also* Tex. Code Crim. Proc. art. 38.22. Thompson "absolutely" appeared to understand each of the rights about

---

[1] Because the parties are familiar with the facts of this case and because Thompson waived the right to appeal his guilt and presents no challenge to the sufficiency of the evidence supporting his conviction, we do not recite the facts of the offense in great detail. *See* Tex. R. App. P. 47.1.

2

which he had been advised. Commander Brinkmann denied that Thompson seemed to be "under the influence" or "too intoxicated to move forward with the questions." Commander Brinkmann also denied that Thompson fell asleep or that Thompson requested to "stop and have a lawyer present" at any time during the almost-two-hour-long interview. Commander Brinkmann did not have to repeat any of his questions to assist Thompson's understanding of them, and he had no concerns that Thompson was not understanding what he was being asked.

Commander Brinkmann testified that Thompson was initially "vague" and "minimized" his involvement in the shooting, but that he "finally fully confessed to what actually happened" and during that time he did "not at all" seem intoxicated. During cross-examination, Commander Brinkmann acknowledged that before his interview one of Thompson's co-defendants told him "about the excessive amounts of Xanax and alcohol that Mr. Thompson consumed." However, Thompson told Commander Brinkmann that he had consumed only "one Xanax and two half cups of vodka" after the shooting. Commander Brinkmann recalled that as Thompson was being booked shortly after making his statement about the offense, Thompson said that "he wished he was high."

After hearing Commander Brinkmann's testimony and counsel's arguments, the district court denied the motion to suppress:

> [The Court]: I am going to find that Commander Brinkmann was a credible witness and based on his experience and his evaluation of Mr. Thompson at the time that he spoke with him, he did—I'm going to find he did [M]irandize him. I don't know the credibility of the information he received from the other witnesses. I don't know at this point who's telling the truth about what [Thompson]'s consumed or not consumed. There had been a significant amount of time that had elapsed, perhaps not enough time for all the drugs to get out of his system, but I'm not sure that that's really the legal requirement. And I think that through Commander Brinkmann's testimony, he indicates that he didn't have trouble communicating, and he did believe that Mr. Thompson understood his

3

*Miranda* warnings. So at this time, I am going to deny the motion to suppress. However, I say that[,] if more information comes forward that changes—or I start watching the video [of the confession] and I think it's clear to me that he's—since it's going to be me that's watching it, that it's clear that he is not—he's perhaps not competent to voluntarily waive, then I can reconsider that ruling, but for right now, I'm going to deny your motion to suppress.

[Defense counsel]: Thank you, Your Honor.

The case proceeded to a four-day punishment hearing to the bench. Several witnesses testified, including a forensic psychologist who stated that, based on his evaluation of Thompson, he would be surprised if Thompson "shot at anyone else" or "kills someone." However, the psychologist also testified, "I wouldn't want [Thompson] to live with his dad again." The district court also heard from Thompson's grandmother's "primary caretaker" from Alabama, who had known Thompson's family for fifteen years and stated that if he had the opportunity to assist Thompson, he would do so. The caretaker stated that because he had multiple bedrooms in his home and ran a company, Thompson would have a place to stay and employment in Alabama if he were placed on probation.

Additionally, the district court heard testimony from the victim, Thompson's father, about the day that he arrived home from work and went inside his house where he was shot by Thompson. Thompson's father testified that he ran to a neighbor's house, and while he was banging on the front door and screaming for help, Thompson shot him again. Thompson's father was hospitalized for ten months after the shooting, underwent seventeen surgeries (with more required in the future), and was discharged to a rehabilitation center to learn to walk again. He testified that he did not want to participate in determining whether Thompson would get "six months" or "40 years." He stated that he "absolutely" feared Thompson.

The court also heard testimony from Commander Brinkmann about Thompson's planning of the shooting. "Extraction Reports" showing three text messages and some of the web history from Thompson's phone on the day before and the day of the shooting were admitted into evidence. A text message sent the day before the shooting stated, "Come over[,] you might witness me kill my dad tho[.]" Two text messages after the shooting stated, "I'm probably about to go to prison plz call me," and later, "Shot my dad twice and now on the run[.]" The web history for Thompson's phone on the day before the shooting included these searches:

- "[W]ill hitting someone with a bat kill them[?]"

- "[H]ow is it possible to kill someone with a hammer so easily?"

- "Most effective way to kill someone at home"

- "Top 10 Most Atrocious Ways to Kill a Person"

- "[H]ow to slit someone's throat fast"

The next day, there were web searches on Thompson's phone for local news stories about the shooting, along with questions about attempted murder charges and prison sentences in Texas.

The State did not offer Thompson's confession into evidence. But defense counsel did question Commander Brinkmann about Thompson's confession during cross-examination at the punishment hearing before the court:

Q. [Defense counsel]: And even though—He originally—Trevor Thompson, when you spoke with him, offered you an excuse for why he had shot his father. He never denied that he shot his father, correct?

A. [Commander Brinkmann]: Correct.

Q. [Defense counsel]: And he, in fact, told you he was—The last hour I think or half-hour, you said you felt like you got a candid conversation from him. He told you he thought that was what he wanted, but immediately regretted it?

5

A. [Commander Brinkmann]:  Yes, ma'am.

Q. [Defense counsel]:  And when you—You flat-out asked him why the second shot; do you recall that?

A. [Commander Brinkmann]:  Yes, ma'am.

Q. [Defense counsel]:  And he was—And he paused.  He was at a loss for an answer and just said, "Because that was the plan"?

A. [Commander Brinkmann]:  Correct.

Q. [Defense counsel]:  Do you recall that?

A. [Commander Brinkmann]:  Yes, ma'am.

Commander Brinkmann also testified that Thompson discussed the specific location in the house for the planned shooting, noting that "shooting him on the tile . . . would be easier to clean up[.]"

After hearing the evidence, the district court found that the evidence supported Thompson's plea of guilt, convicted Thompson of the charged offense, and found that a deadly weapon was used in the commission of the offense.  The district court then assessed Thompson's punishment at thirty-five years' imprisonment with credit for time served.  Thompson filed a motion for new trial that was overruled by operation of law.  This appeal followed.

## DISCUSSION

### Eighth Amendment disproportionate-sentence issue not preserved

In his first issue, Thompson contends that his sentence is grossly disproportionate to the crime committed.  The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."  U.S. Const. amend. VIII, *see id.* amend. XIV (incorporating this

6

constitutional protection to make it applicable to each state); *Robinson v. California*, 370 U.S. 660, 675 (1962); *Meadoux v. State*, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010).

"A sentencing issue may be preserved by objecting at the punishment hearing, or when the sentence is pronounced." *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013). Failure to complain about an allegedly disproportionate sentence in the trial court forfeits the error on appeal. *See, e.g.*, *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (concluding that defendant failed to present complaint that his sentence violated Texas Constitution's protection against cruel or unusual punishment); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (concluding that Eighth Amendment complaints are forfeited if not raised in trial court); *Williams v. State*, 191 S.W.3d 242, 262 (Tex. App.—Austin 2006, no pet.) (noting that "[c]laims of cruel and unusual punishment must be presented in a timely manner" or are "waived"); *Fuller v. State*, No. 03-18-00709-CR, 2020 Tex. App. LEXIS 4773, at *17 (Tex. App.—Austin June 25, 2020, no pet. h.) (mem. op., not designated for publication) (concluding that defendant's complaint about his sentence was forfeited by his failure to raise that complaint when he was sentenced during punishment phase of trial); *see also* Tex. R. App. P. 33.1(a) (addressing preservation of error generally).

Here, as the State correctly notes, Thompson failed to present any complaint about his sentence during the punishment phase of trial when he was sentenced. Accordingly, we conclude that this issue was not preserved for our review. *See* Tex. R. App. P. 33.1(a); *Rhoades*, 934 S.W.2d at 120; *Curry*, 910 S.W.2d at 497; *Williams*, 191 S.W.3d at 262; *Fuller*, 2020 Tex. App. LEXIS 4773, at *17. We overrule Thompson's first issue.

**Sufficiency of evidence to support sentence**

In his second issue, Thompson challenges the legal sufficiency of the evidence supporting his sentence, contending that the length of his sentence "seems unfair" given the forensic psychologist's testimony that he would be surprised if Thompson "shot at anyone else" or "kills someone,"[2] and the testimony from Thompson's grandmother's caretaker that Thompson would have a place to stay and employment in Alabama if Thompson were to be released on probation. However, as the Court of Criminal Appeals has explained,

> [T]he task of setting a particular length of confinement within the prescribed range of punishment is essentially a "normative" judgment. Aside from a few specific instances where the range of punishment depends upon the determination of discrete facts, "[d]eciding what punishment to assess is a normative process, not intrinsically factbound." Indeed, we have described the sentencer's discretion to impose any punishment within the prescribed range to be essentially "unfettered." Subject only to a very limited, "exceedingly rare," and somewhat amorphous Eighth Amendment gross-disproportionality review, *a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal.*

*Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (internal citations omitted) (emphases added); *Shaw v. State*, No. 03-19-00435-CR, 2020 Tex. App. LEXIS 6402, at *5 (Tex. App.—Austin Aug. 13, 2020, no pet. h.) (mem. op., not designated for publication). Thompson's sentences are not subject to an evidentiary sufficiency review. Moreover, Thompson acknowledges that generally a sentence will not be disturbed when, as here, it is within the statutorily prescribed range. *See Nunez v. State*, 565 S.W.2d 536, 538 (Tex. Crim. App. 1978).

---

[2] However, the psychologist also testified that he "wouldn't want [Thompson] to live with his dad again" and acknowledged that he did not conduct any type of future-risk assessment on Thompson in this case.

8

Further, this case is not one in which no evidence supported the punishment decision, thereby implicating Thompson's due course of law protections. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *see also* Tex. Const. art. I, § 19 (due course of law provision in Texas Constitution); Tex. Code Crim. Proc. art. 1.04 (addressing due course of law); *Shaw*, 2020 Tex. App. LEXIS 6402, at *5. "[A] sentence that is within the legislatively prescribed range, based upon the sentencer's informed normative judgment, and in accordance with due process of law 'is not subject to a sufficiency of the evidence review on appeal.'" *Parker v. State*, 462 S.W.3d 559, 566 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (quoting *Jarvis v. State*, 315 S.W.3d 158, 162 (Tex. App.—Beaumont 2010, no pet.)); *Shaw*, 2020 Tex. App. LEXIS 6402, at *5.

Here, the record reflects that Thompson's thirty-five-year sentence is within the permissible statutory range for the offense of aggravated assault causing serious bodily injury-family violence. *See* Tex. Penal Code § 22.02(b)(1) (defining offense of aggravated assault and providing, in relevant part, that offense is first-degree felony if actor uses deadly weapon during commission of that assault and causes serious bodily injury to person who is family member); *see id.* § 12.32 (establishing punishment range of five to ninety-nine years or life imprisonment for first-degree felony). Thus, that sentence is not subject to appellate review for evidentiary sufficiency. *See Parker*, 462 S.W.3d at 566; *Jarvis*, 315 S.W.3d at 162; *see also Ex parte Chavez*, 213 S.W.3d at 323-24; *Garcia*, 316 S.W.2d at 735; *Shaw*, 2020 Tex. App. LEXIS 6402, at *6. Moreover, due-course-of-law protections were not implicated here because the district court was presented with substantial evidence on which it could have relied when assessing punishment, including testimony from the father-victim about Thompson's shooting him, his lengthy hospitalization and recovery process, and his fear of Thompson; and Commander

9

Brinkmann's testimony about his investigation of the offense and the evidence showing Thompson's planning of the shooting beforehand. *Cf. Jackson*, 680 S.W.2d at 814; *Shaw*, 2020 Tex. App. LEXIS 6402, at *6. Accordingly, we overrule Thompson's second issue.

**Denial of motion to suppress**

Thompson's third issue contains two subparts. First, he contends that the district court erred by denying his motion to suppress evidence of his confession to police that "may not have been voluntary because of [his] intoxication." Alternatively, Thompson contends that the district court erred by not entering a separate order containing its written findings as to the voluntariness of his confession.

We review a trial court's ruling on a motion to suppress evidence under an abuse of discretion standard. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). This requires viewing the record "in the light most favorable to the trial court's determination" and reversing that determination "only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). We must uphold the trial court's ruling on the motion to suppress if it is supported by the record and correct under any theory of law. *Id.* We consider only the evidence adduced at the suppression hearing.[3] *Arguellez*, 409 S.W.3d at 662. "[T]he trial court is the 'sole and exclusive trier of fact and judge of the credibility of the witnesses' and the evidence presented at a hearing on a motion to suppress, particularly where the motion is based on the voluntariness of a confession." *Delao v.*

---

[3] However, when parties relitigate a suppression issue during a trial on the merits, we consider all evidence, from the suppression hearing and the trial, in reviewing the trial court's decision. *Turrubiate v. State*, 399 S.W.3d 147, 150-51 (Tex. Crim. App. 2013); *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).

*State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007) (quoting *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996)). Thus, we afford "great deference" to the trial court's ruling admitting or excluding evidence of a defendant's confession, and that ruling will "be overturned on appeal only where a flagrant abuse of discretion is shown." *Id.*

Determining the voluntariness of a confession requires an examination of the totality of circumstances surrounding its acquisition. *Wyatt v. State*, 23 S.W.3d 18, 23 (Tex. Crim. App. 2000). Intoxication is a relevant factor but does not render a defendant's confession involuntary per se. *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996); *Paolilla v. State*, 342 S.W.3d 783, 792 (Tex. App.—Houston [14th Dist.] May 26, 2011, no pet.); *Saldana v. State*, 59 S.W.3d 703, 712 (Tex. App.—Austin 2001, pet. ref'd) ("Even if we assume that [defendant] was intoxicated when he was arrested and interrogated, that fact alone is not sufficient to render his confession involuntary."). Rather, the relevant inquiry is "whether the defendant's intoxication rendered him incapable of making an independent, informed decision to confess." *Jones*, 944 S.W.2d at 651; *see Paolilla*, 342 S.W.3d at 792 ("When the record reflects evidence of narcotics, medications, or other mind-altering agents, the question becomes whether those intoxicants prevented the defendant from making an informed and independent decision to waive her rights."); *Saldana*, 59 S.W.3d at 712 ("The central question is the extent to which [defendant] was deprived of his faculties due to the intoxication." (quoting *Nichols v. State*, 754 S.W.2d 185, 190 (Tex. Crim. App. 1988))).

Here, we note that the State did not offer Thompson's confession into evidence during the punishment hearing. Thus, the record presented to us on appeal is the same as it would have been if Thompson had not made his confession, or if his motion to suppress his confession had been granted. *See, e.g.*, *Severs v. State*, 87 S.W.3d 752, 754 (Tex. App.—

11

Texarkana 2002, no pet.) (noting that although trial court denied defendant's motion to suppress his confession, prosecution did not offer his confession or any videotaped interviews into evidence during its case-in-chief, defendant was responsible for introducing that evidence). The State contends that under the doctrine of "curative admissibility," Thompson forfeited his complaint about the district court's admission of the evidence by questioning Commander Brinkmann about the confession during the punishment hearing. *See Maynard v. State*, 685 S.W.2d 60, 65 (Tex. Crim. App. 1985) (noting that under doctrine of curative admissibility, "when the defendant offers the same evidence to which he earlier objected, he is not in a position to complain on appeal"); *Aguilar v. State*, 980 S.W.2d 824, 826 (Tex. App.—San Antonio 1998, no pet.) ("Under the doctrine of curative admissibility, the admission of improper evidence cannot be asserted as grounds for reversal on appeal if the defendant offers evidence of substantially the same facts."). In reply, Thompson contends that defense counsel's questioning about the confession was only an attempt to explain the evidence, which does not constitute a waiver of the complaint on the suppression ruling. *See Smith v. State*, 957 S.W.2d 881, 883 (Tex. App.—Texarkana 1997, no pet.) ("A defendant does not waive his right to challenge the admissibility of evidence if he sought to meet, destroy, or explain it by the introduction of rebutting evidence."); *Rodriguez v. State*, 919 S.W.2d 136, 139 (Tex. App.—San Antonio 1995, no pet.) (noting exception to "curative admissibility" that "arises where a defendant testifies to refute, deny or impeach the evidence or testimony objected to" but stating that "waiver would still result in such circumstances if the defendant confirms the truth of such facts or evidence in attempting to create a defense based on those facts, unless the impact of the evidence impelled the defendant to testify").

But even if Thompson did not forfeit his complaint, we conclude that he would not prevail on this record. The district court heard testimony during the suppression hearing from Commander Brinkmann—an officer with more than two decades of law-enforcement experience whom the court found credible—that the interview with Thompson began at least five hours after his arrest; that he provided Thompson with *Miranda* warnings recited from a card provided by the district attorney's office; and that Thompson appeared to understand the rights read to him. Commander Brinkmann further testified that Thompson did not show signs of intoxication, did not fall asleep during an almost-two-hour-long interview, and stated after the interview that "he *wished* he was high." (Emphasis added.)

The evidence at the suppression hearing—viewed in the light most favorable to the district court's ruling and with proper deference to the court's determinations of historical fact and of witness credibility and demeanor—supports the district court's findings that Thompson received the proper statutory and *Miranda* warnings; that Thompson was not intoxicated and understood those warnings; and thus, that he provided his confession voluntarily. On this record, Thompson failed to show that the district court's denial of the motion to suppress evidence of the confession was a flagrant abuse of discretion, *see Delao*, 235 S.W.3d at 238, or was arbitrary, unreasonable, or outside the zone of reasonable disagreement, *see Story*, 445 S.W.3d at 732.

**Separate order with fact findings unnecessary**

Alternatively, Thompson contends that after his pretrial motion to suppress was denied, the district court erred by not entering a separate order containing its written findings of fact. Thompson points to article 38.22, section 6 of the Code of Criminal Procedure, which

13

requires a trial court to make fact findings when the voluntariness of defendant's statement is challenged, and if the court determines that the statement was made voluntarily and is admissible, further requires that the court enter an order stating its conclusion along with specific fact findings for its conclusion, "which order shall be filed among the papers of the cause." Tex. Code Crim. Proc. art. 38.22(6); *Oursbourn v. State*, 259 S.W.3d 159, 174-75 (Tex. Crim. App. 2008) (quoting article 38.22, section 6 in considering when defendant is entitled to jury instruction on voluntariness of his statement). Thompson contends specifically that "reading the findings into the record" is insufficient and that "[n]o Findings of Fact were entered in this case."

However, the record shows that the district court recited its findings into the reporter's record in open court and in the presence of Thompson's counsel, who did not object to the provision of the court's findings in this manner. *See Busby v. State*, 253 S.W.3d 661, 670 (Tex. Crim. App. 2008) (noting that trial court used same procedure for issuance of its fact findings). The Court of Criminal Appeals has approved of this procedure, concluding that a trial court complies with the statutory requirements to file article 38.22 findings as to the voluntariness of a defendant's confession "when it dictates its findings and conclusions to the court reporter, and they are transcribed and made a part of the statement of facts [reporter's record[4]], filed with the district clerk and made a part of the appellate record." *Murphy v. State*, 112 S.W.3d 592, 601-02 (Tex. Crim. App. 2003); *see Busby*, 253 S.W.3d at 670 (quoting *Murphy*); *Vasquez v. State*, 179 S.W.3d 646, 654-55 (Tex. App.—Austin 2005) (holding that trial

---

[4] The "statement of facts" is now called the reporter's record. *See* Tex. R. App. P. 34 cmt. to 1997 amendment ("Clerk's record is substituted for transcript, and reporter's record is substituted for statement of facts throughout the rules."); *see Nejnaoui v. State*, 44 S.W.3d 111, 115 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (noting change in references to these portions of appellate record); *see also Waites v. State*, No. 06-09-00096-CR, 2010 Tex. App. LEXIS 4583, at *4 n.2 (Tex. App.—Texarkana June 18, 2010, no pet.) (mem. op., not designated for publication) (same).

court complied with requirements of article 38.22, section 6 by reading its findings into record), *aff'd*, 225 S.W.3d 541 (Tex. Crim. App. 2007)).  For the reasons stated above, we overrule both subparts of Thompson's third and final issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed:   September 30, 2020

Do Not Publish