

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00262-CR

———————————————

TYRONE OLIVER JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F21-2287-211

Before Birdwell, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Tyrone Oliver Jr. appeals his conviction for murder. *See* Tex. Penal Code Ann. § 19.02(a)(2). The jury found him guilty and assessed his punishment at sixty-seven years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

In two issues, Oliver complains that the trial court erred by (1) admitting medical records and testimony related to his allegedly involuntary confession and (2) failing to grant a mistrial after a witness testified about an extraneous bad act in violation of a limine order. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In May 2021, Oliver was in a relationship with Dejia Lovelace (Lovelace), and they traveled from Georgia to stay with Oliver's father (Father) in Dallas, Texas. In the early morning hours of May 23, 2021, Father arrived home and found Oliver leaving a bedroom. Father entered the bedroom and discovered Lovelace laying unresponsive on the bed. Father called 911 and attempted CPR, but Lovelace was deceased. Police arrived and began their investigation, but Oliver was not immediately arrested.

The next day, concerned with Oliver's mental state, Father called the police five times. In response, Oliver was transported to a Plano hospital for treatment and was later transferred to Garland Behavioral Health hospital (GBH) for further care.

Oliver was voluntarily admitted to GBH, and at approximately 7:30 a.m., he was administered mood stabilizing and antipsychotic medications (Haldol, Ativan, and Benadryl).

Approximately five hours later, Oliver spoke with his attending nurse, and he admitted to her that he had "blacked out[,]" that he had "put his hands around [Lovelace][,]" and that "this time [he had gone] too far." Two days later, Oliver was arrested for Lovelace's murder. In their investigation, police learned that Oliver had also made similar incriminating statements to Lovelace's uncle, telling him that he previously choked Lovelace and that he had gone "a little too far with it" this time. An autopsy was completed, and the medical examiner ruled Lovelace's death a homicide by asphyxia.

At trial, the State sought to introduce hospital records and testimony from the attending nurse related to Oliver's confession. Oliver objected on several grounds: (1) the statement was involuntary due to the influence of "heavy medications," (2) the nurse had been acting as a State agent, (3) the statement violated Rule 403 (more prejudicial than probative), and (4) the statement constituted hearsay within hearsay. After a hearing outside the presence of the jury, the trial court overruled the objections and admitted the medical records and the nurse's testimony relating to Oliver's confession.

The State also called Father as a witness. Father testified that Oliver had lived in Georgia before coming to Texas to live with him in May of 2021. Father explained

3

that Oliver's mother had driven Oliver and Lovelace to his home. The State then asked Father why Oliver's mother had dropped him off in Texas, and Father responded, "[B]ecause he had a bounty on his head from another case." After the State asked three additional questions, Oliver requested to be heard outside the presence of the jury. Oliver complained that the bounty answer had violated a limine order related to prior bad acts, and he moved for a mistrial. The trial court sustained the objection and ordered the State to instruct Father not to discuss the bounty situation any further, but the trial court denied his request for a mistrial.

The jury found Oliver guilty of murder and assessed his punishment at sixty-seven years' confinement in the Texas Department of Criminal Justice. The trial court sentenced Oliver in accordance with the jury's recommendation, and this appeal followed.

## III. DISCUSSION

### A. CONFESSION

In his first issue, Oliver complains that the trial court erred by admitting GBH medical records and testimony pertaining to his confession because it (1) violated his physician-patient communications privilege, (2) violated the Health Insurance Portability and Accountability Act of 1996 (HIPPA), and (3) contained involuntary statements. We disagree.

4

### 1. Physician-Patient Communication

Oliver contends that the State violated his physician-patient communication privilege when it obtained his medical records. This argument lacks merit.

It is well settled that Texas Rule of Evidence 509 protects confidential communications between physicians and patients by prohibiting their disclosure. However, except for persons being voluntarily evaluated or treated for alcohol or drug abuse, there is no such physician-patient privilege in a criminal case. *See* Tex. R. Evid. 509(b). Accordingly, we conclude that Oliver did not have a physician-patient privilege in this criminal matter. *Id*; *State v. Hardy*, 963 S.W.2d 516, 519 (Tex. Crim. App. 1997).

### 2. HIPPA Disclosure

Oliver next asserts that the State violated HIPPA when it obtained his medical records by not utilizing the avenues of permitted disclosures.

Much like the physician-patient privilege, HIPPA also affords protections for a person's medical records. *See generally* 45 C.F.R. § 164.306 (2013). However, medical records in a criminal case may be obtained through a permitted disclosure when there is a grand-jury subpoena issued. *See* 45 C.F.R. § 164.512(f)(1)(ii)(B) (2004). Oliver contends that the State failed to adhere to this requirement when it obtained his medical information without a proper grand-jury subpoena. Yet, he forfeited this complaint by not raising an objection on the matter with the trial court. *See generally* Tex. R. App. P. 33.1(a).

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). Because it is a systemic requirement, this court should independently review error preservation, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon*, 595 S.W.3d at 223.

Further, the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). To determine whether the complaint on appeal conforms to that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009); *Pena*, 285 S.W.3d at 464.

6

Here, Oliver timely objected to the admission of the medical records; however, it was on grounds unrelated to an alleged HIPPA-disclosure violation. The three bases for his objection were (1) "concerns about the voluntariness of the statements," (2) the "heavy-duty narcotics involved," and (3) the belief that the nurse may have been "acting as a State agent." At no point in his objection to the admission of the medical records did Oliver specifically complain of—or even allude to—the State's compliance with HIPPA's disclosure requirements. We conclude that Oliver's complaint on appeal does not comport with the complaint that he made to the trial court. *See Clark*, 365 S.W.3d at 339. Therefore, we hold that Oliver forfeited this complaint.

### 3. Voluntariness of Oliver's Statements

Finally, Oliver contends that his confession to the nurse was not freely and voluntarily made because he was under the influence of "strong medications."

Under both constitutional law and state law, a defendant's statement or confession must be voluntary to be admissible. *Lopez v. State*, 610 S.W.3d 487, 494 (Tex. Crim. App. 2020); *see* Tex. Code Crim. Proc. Ann. art. 38.21 ("A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion . . . ."). A defendant may claim that his statement was involuntary and therefore may not be used as evidence against him under different theories: (1) general voluntariness, Tex. Code Crim. Proc. Ann. art. 38.22 § 6; (2) *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), as expanded

7

in the Texas confession statute, Tex. Code Crim. Proc. Ann. art. 38.22 §§ 2, 3; and (3) the Due Process Clause. *See Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008). Involuntariness is reviewed under each of these theories by examining the totality of the circumstances surrounding the statement or confession. *Lopez*, 610 S.W.3d at 494.

A statement is involuntary for purposes of federal due process only when there is police overreaching, i.e., some coercive police activity causally related to the confession. *Oursbourn*, 259 S.W.3d at 169–70; *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *cf. Miranda*, 384 U.S. at 478, 86 S. Ct. at 1630. Conversely, under Section 6 of Article 38.22 of the Texas Code of Criminal Procedure—the "general voluntariness" provision—a defendant may claim that his statement was not freely and voluntarily made and thus may not be used as inculpatory evidence. *See Oursbourn*, 259 S.W.3d at 169–70; *see also* Tex. Code Crim. Proc. Ann. art. 38.22, § 6. The general voluntariness provision may be construed as "protecting people from themselves because the focus is upon whether the defendant voluntarily made the statement," and police overreaching is not required to claim involuntariness. *Oursbourn*, 259 S.W.3d at 172.

When there is evidence of the defendant's use of narcotics, medications, or other mind-altering agents, the question becomes whether those intoxicants prevented the defendant from making an informed and independent decision. *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996). "A confession can be involuntary under

8

state law if the suspect lacked the mental capacity to understand his rights or if, due to a temporary mental condition, he did not understand what he was confessing to." *Sandoval v. State*, 665 S.W.3d 496, 526 (Tex. Crim. App. 2022).

Once a defendant moves to suppress a statement on the ground of "involuntariness," the due process guarantee requires the trial court to hold a hearing on the admissibility of the statement outside the presence of the jury. *Alvarado,* 912 S.W.2d at 211. At the hearing, the trial court is the sole judge of the weight and credibility of the evidence, and the trial court's finding may not be disturbed on appeal absent a clear abuse of discretion. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993). We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Martinez*, 570 S.W.3d at 281.

At trial, Oliver sought to suppress the admission of his confession on the basis that it was involuntary due to the influence of "heavy medications." Outside the presence of the jury, the trial court heard testimony from his attending nurse, and it

9

overruled Oliver's objection and admitted the medical records and the related testimony.

We recognize that Oliver was administered three medications—Haldol, Ativan, and Benadryl—that may have influenced his mental state. This is further evidenced by the nurse's testimony that the effect of these medications could result in an altered, lethargic state.

However, while intoxication is a relevant factor, it does not render a defendant's confession involuntary per se. *Jones*, 944 S.W.2d at 651. Rather, the inquiry is "whether the defendant's intoxication rendered him incapable of making an independent, informed decision to confess." *Id.*; *Saldana v. State*, 59 S.W.3d 703, 712 (Tex. App.—Austin 2001, pet. ref'd) ("Even if we assume that [defendant] was intoxicated when he was arrested and interrogated, that fact alone is not sufficient to render his confession involuntary.").

Oliver's attending nurse also testified that she had never observed a patient make false statements as a result of taking the administered medications; and while his mood may have been altered, he "would still [have been] sane." Further, approximately five hours elapsed from the time that Oliver was administered the medications to when he spoke with the nurse and gave his confession.

In the trial court's findings of fact and conclusions of law, it found that there was no evidence that the medications affected Oliver's ability to make an informed

10

decision to confess or induced him to make a false statement.[1]  Therefore, we conclude that the evidence, viewed in the light most favorable to the trial court's finding, supports the finding that the medications did not affect Oliver's ability to make an informed decision to confess.  *See Wiede*, 214 S.W.3d at 24–25.  Based upon those factual findings, we further conclude that the trial court did not err by determining that Oliver knowingly, intelligently, and voluntarily waived his rights.  *See id.*  We hold that the trial court did not abuse its discretion by overruling Oliver's objection and admitting the medical records and the nurse's testimony containing his confession.  Accordingly, we overrule Oliver's first issue.

## B. MISTRIAL

In his second issue, Oliver complains that the trial court erred by not granting his motion for mistrial after a State's witness violated a limine order when he testified about an extraneous bad act.

Again, in order to preserve error for appellate review, a timely and specific objection must be made and a ruling obtained.  Tex. R. App. P. 33.1(a)(1)(A).  It is well settled that the granting or denial of a motion in limine does not preserve error.  *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).  Therefore, once the

---

[1]In his brief, Oliver complained that the trial court overruled his objections to the admission of the medical records without entering an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific findings of fact upon which the conclusion was based.  We abated the appeal to the trial court, and it provided its findings of fact and conclusions of law on the voluntariness of his statement.

11

motion in limine is violated, counsel must obtain an adverse ruling to preserve the complaint. *Westmoreland v. State*, 174 S.W.3d 282, 290 (Tex. App.—Tyler 2005, pet. ref'd). To preserve error regarding the admission of evidence in violation of a limine order, the preferred procedure is (1) a timely, specific objection; (2) a request for an instruction to disregard; and (3) a motion for mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). A motion for mistrial must be timely and specific. *Id.* at 69–70. To be "considered timely, the objection must be made at the first opportunity or as soon as the basis of the objection becomes apparent." *Wilson v. State*, 44 S.W.3d 602, 606 (Tex. App.—Fort Worth 2001, pet ref'd). Without a "legitimate reason to justify the delay, error is waived if an objection is made after the prosecutor has elicited the improper testimony." *Id.*

Prior to the start of testimony, Oliver's attorney tendered to the trial court a proposed order for "Defendant's motion in limine" that sought to limit the introduction of his extraneous bad acts without first approaching the bench. The State did not object, and the trial court granted the motion.

At trial, Father testified that Oliver's mother had driven him to Texas because "he had a bounty on his head from another case." This testimony was not elicited by the State, and Oliver did not immediately object to the testimony. Instead, Oliver permitted the State to ask three additional questions—wholly unrelated to the alleged bad act—before he eventually requested to be heard outside the presence of the jury

12

to address the limine violation.[2]  At the bench conference, Oliver did not request a curative instruction, but instead, he moved for a mistrial.

The limine violation was apparent at the time the subject was raised by Father's statement, yet Oliver did not object, request a curative instruction, or move for a mistrial.  Instead, he "waited a couple of questions" before addressing the objectionable statement.  This is not timely, and he did not respond at the first opportunity.  Oliver acknowledged his delayed response at the bench conference without offering a legitimate reason to justify the delay.  Because his objection was not timely, we hold that Oliver forfeited this complaint, and we overrule his second issue.

## IV.  CONCLUSION

Having overruled both of Oliver's issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  February 27, 2025

---

[2]Without addressing whether Oliver's "bounty" was a violation of the limine order, we note that to constitute an extraneous offense under Texas Rule of Evidence 404(b)(1), the evidence must show that a crime or bad act was committed and that the defendant was connected to it.  *See Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993).  Here, outside the presence of the jury, the trial court reasoned that the "only information in front of the jury—there was something about a bounty from another case, but [the witness] did not say that [Oliver] was a – was the – I guess the Defendant in the case. . . ."

13